**Brenda DICKENSON, et al., Plaintiffs,**

v.

**Michael PETIT, Defendant.**

**Civ. No. 82–0041–B.**

United States District Court,
D. Maine.

March 19, 1982.

Kathleen Caldwell, Solomon Goldman, Hugh Calkins, Pine Tree Legal, Bangor, Me., Robert Mittel, Portland, Me., for plaintiffs.

James E. Smith, Katherine Greason, Asst. Atty. Gen., Augusta, Me., for defendant.

## MEMORANDUM DECISION ON APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF

CYR, District Judge.

This civil rights suit arises under 42 U.S.C. § 1983 as a result of official actions taken by the defendant, Michael Petit, Commissioner of the Maine Department of Human Services [Commissioner], in the implementation of the Maine Aid to Families with Dependent Children [AFDC] program as a consequence of the enactment of the Omnibus Budget Reconciliation Act [O. B. R. A.], Public Law 97–35, 95 Stat. 357, made generally effective October 1, 1981. In behalf of themselves and their minor children, the individual plaintiffs,[1] proceeding *in forma pauperis*, request preliminary injunctive relief prospectively restraining the Commissioner from terminating or reducing their AFDC benefits and those of similarly-situated class members under emergency rules

---

1. The named plaintiffs include five individuals suing on behalf of themselves and their minor children, and three Maine-based "non-profit organizations of low income people."

and regulations adopted by the Commissioner on November 1, 1981, effective January 1, 1982. The thrust of their contentions is twofold. First, that the requirements of the Maine Administrative Procedure Act, 5 M.R.S.A. § 8001 *et seq.*, [A.P.A.], were not complied with as of January 1, 1982, thereby invalidating amendments to the Maine Public Assistance Payments Manual [MPAPM] purporting to implement the changes mandated by O. B. R. A. Second, that certain rules and regulations contained in the amended MPAPM fail to conform with federal requirements.

The jurisdiction of the court is founded on 28 U.S.C. §§ 1331 & 1343(3) and 42 U.S.C. § 1983. Plaintiffs invoke the court's pendent jurisdiction of their state-law claims as well.

The complaint was filed on February 10, 1982 and amended on February 17, 1982. The court met and conferred with counsel on February 19, 1982 and heard the application for preliminary injunctive relief on February 24, 1982. At that hearing, oral argument but no testimonial evidence was presented. The Commissioner moved on February 24, 1982, without objection, to join the United States Department of Health and Human Services [H.H.S.], the department charged with administering the AFDC program at the federal level. H.H.S. was not represented at either the conference or the hearing.

Plaintiffs seek to maintain the action as a class action under Fed.R.Civ.P. 23, without objection by the Commissioner, under a jointly proposed class definition.[2] The record includes several affidavits, stipulations of fact, as well as a stipulation relating to documentary materials.

## I

## STATEMENT OF THE CASE

### A. *General Background*

The AFDC program was created by Congress in 1935 under Title IV, Part A, of the Social Security Act, 49 Stat. 627, codified at 42 U.S.C. §§ 601–676. The program is one of several joint federal-state public assistance programs and is intended to promote the care of needy dependent children in their own homes or in the homes of their relatives. The program has a related purpose of assisting parents or relatives, with whom such children live, to attain self-sufficiency. *See* 42 U.S.C. § 601.

Under the AFDC program, benefits are paid and administered by states electing to participate in the program. In order to participate, however, a state must first obtain approval of its state plan by H.H.S. and the plan must conform with federal law and with the implementing H.H.S. regulations. 42 U.S.C. § 604. *Cf.* 22 M.R.S.A. § 3741. If a state receives approval of its plan it can obtain reimbursements from the federal government for a percentage of the benefits paid and administrative expenses incurred. *See* 42 U.S.C. § 603.

The State of Maine participates in the AFDC program. The Maine Department of Human Services [D.H.S.] administers and operates the AFDC program in Maine. 22

---

**2.** The two plaintiff classes jointly proposed by the parties are:

SUBCLASS A

All recipients of AFDC under the MPAPM and all persons who were recipients prior to February 1, 1982, whose benefits have been or will be reduced or terminated because the "$30 plus ⅓" work-incentive income disregard was not applied to their grant calculations for four consecutive months subsequent to the implementation of changes in the MPAPM promulgated pursuant to O. B. R. A.

SUBCLASS B

All recipients of AFDC under the MPAPM and all persons who were recipients prior to February 1, 1982, whose benefits have been or will be reduced or terminated because of application of the new standard work-expense rule in determining their eligibility or grant amount, and who had earnings from which were deducted mandatory state or federal income tax withholdings and F. I. C. A. payments, and who did not have such amounts deducted from their gross income over and above the new $75 standard work-expense disregard for purposes of determining eligibility or grant amount.

The court has this date certified this action as a class action pursuant to Fed.R.Civ.P. 23(c), the class definitions having met the requirements of Fed.R.Civ.P. 23(a) and 23(b)(2).

M.R.S.A. § 3741 *et seq.* D.H.S. promulgates the Maine Public Assistance Payments Manual [MPAPM] which sets out the regulatory scheme under which the Maine AFDC program functions. The MPAPM is a rule within the meaning of the A.P.A. *See* 5 M.R.S.A. § 8002(9)(A).

Plaintiffs contend that the method that the State of Maine began using February 1, 1982 for calculating AFDC-recipient income contravenes federal law by including within the definition of "income," taxes withheld from earned income. Plaintiffs further contend that many Maine AFDC recipients have been unlawfully denied benefits because D.H.S. has not applied the so-called "$30 plus ⅓" disregard to recipients for four months following the adoption of the amended MPAPM.

B. *Federal Law Prior to O. B. R. A.*

Since the AFDC program is intended to provide assistance only to "needy" families and in an amount limited by the extent of their "need," AFDC statutory provisions and H.H.S. regulations have required that the determination of AFDC eligibility is to be made by reference to family "income and resources," and that the calculation of the amount of the monthly AFDC grant is to be made by comparing the income of the family, after certain deductions, to the so-called "standard of need," which "reflects the state's view of the amount necessary to provide for the essential needs, such as food, clothing, and shelter, of a hypothetical family in question." *Ram v. Blum,* 533 F.Supp. 933, 937 (S.D.N.Y.1982).

Thus, prior to the August 13, 1981 enactment of O. B. R. A., section 402(a)(7) of the Social Security Act, 42 U.S.C. § 602(a)(7),[3] provided that the states, in determining the need of an AFDC recipient, should

except as may be otherwise provided in clause (8), . . . take into consideration any other income and resources of any child or relative claiming aid to families with dependent children . . . as well as any

expenses reasonably attributable to the earning of any such income. . . .

Clause (8), under the pre-O. B. R. A. version of section 402(a), required that the states, in making the determination required under clause (7), subject to certain exceptions not here applicable, *see* 42 U.S.C. § 602(a)(8)(C) & (D) (1980), disregard in any month:

1. all of the earned income of student dependent children receiving aid, 42 U.S.C. § 602(a)(8)(A)(i) (1980); and

2. $30 of the total of earned income of nonstudent dependent children receiving aid, relatives receiving aid, and any other individual whose needs are considered in making the determination under clause (7), plus one-third of the remainder of such income, 42 U.S.C. § 602(a)(8)(A)(ii) (1980).

Clause (8) also permitted the states, subject to limitations prescribed by H.H.S., to permit all or portions of earned or other income to be set aside for future identifiable needs of a dependent child or to disregard an additional $5 per month. 42 U.S.C. § 602(a)(8)(B) (1980). Clause (8) also forbade the states from disregarding earned income in any particular month if the income of the person whose income was considered exceeded his or her need, as determined under clause (7) without regard to clause (8), unless "for any one of the four months preceding such month, the needs of such persons were met by the furnishing of aid under the plan." 42 U.S.C. § 602(a)(8)(D) (1980).

C. *MPAPM Prior to O. B. R. A.*

In accordance with the pre-O. B. R. A. AFDC statutes and regulations, the MPAPM, in its pre-February 5, 1982 form, contained a 12-page section entitled "Income," which provided that the "[i]ncome which is *available* will be considered as a resource in the determination of the assistance payment." MPAPM, Chapter II, § C, p. 1. "*Available income* is defined as that income which is received and under the

---

**3.** Section 402(a) of the Social Security Act, 42 U.S.C. § 602(a), is hereinafter referred to as "section 402(a)."

control of the client (or his guardian or conservator) during the period for which need is being determined." *Id.* "*Potential income* is defined as that income which could be received if action were taken to obtain it (e.g., social security, unemployment compensation, V. A. benefits, etc.), ... [and] will not be considered in determining the amount of assistance payment until it is received." *Id.* Following these definitions, the MPAPM defined two types of income—"unearned income" and "earned income." "Earned income is income produced by the labor or services of an individual." *Id.* After a lengthy subsection defining anticipated income, the MPAPM contained a subsection entitled "Incentive Disregards of Earned Income," which dealt with the earnings disregard for student AFDC recipients and with the disregard of $30 plus one-third of the remainder of income earned by others whose needs were to be considered in computing the assistance grant. *Id.* at 8–9. The next subsection of the MPAPM, entitled "Method of Determining Work Related Expenses and Applying Incentive Disregards," listed twelve work-related expenses, including

  a. Deductions for Social Security or any other retirement benefits;

  b. Federal Income Tax deductions as withheld; and

  c. State Income Tax deductions as withheld.

These three items were listed in MPAPM along with union dues, costs of special uniforms, costs of special tools, costs of lunches required to be purchased away from home, costs of transportation to and from work, mandatory health and/or life insurance premiums, child-care costs, travel costs and costs of using the home as a work headquarters. *See* MPAPM, Chapter II, § C, pp. 9–11, (pre-February 5, 1982). After listing these "expenses," MPAPM provided: "The net amount remaining plus all unearned income will be considered in determining eligibility and grant amount." This subsection also set out the steps to determine *eligibility* for AFDC:

  1. Subtract appropriate work related expenses from earned income.

  2. Add the balance to 'unearned income.'

  3. Subtract the total from 'total requirements,' (full need).

  4. If the total of (1) and (2) is less than 'total requirement', (full need), the family is entitled to the incentive disregards. If the total of (1) and (2) is equal to or greater than 'total requirements', (full need), the family is ineligible for AFDC.

*Id.* at 11. Finally, this MPAPM subsection provided that, if the test of eligibility is met, "net income is then deducted from the ratably reduced standard in determining amount of payment."

### D. Application of MPAPM Prior to O. B. R. A.

In accordance with the pre-O. B. R. A. federal statute and regulations and the MPAPM, in December of 1981 and January of 1982 and AFDC benefit amount of the named plaintiff, Karen Sleeper, was calculated as follows:

| | |
|---|---|
| Gross monthly income | $688.95 |
| Less $30 incentive disregard | −30.00 |
| | 658.95 |
| Additional one-third incentive disregard | −219.65 |
| | 439.30 |
| Mandatory withholdings (federal and state income taxes and F.I.C.A.) | −130.73 |
| | 308.57 |
| Work-related expenses | −61.10 |
| Earned income after disregards | $247.47 |

After deducting the resulting amount ($247.47) from the payment level, her grant amount was $131. *See* Stipulations filed February 24, 1982.

### E. O. B. R. A. Amendments

O. B. R. A. was signed into law on August 13, 1981. O. B. R. A. mandated, along with various other reductions in spending levels for non-AFDC federal programs, major revisions in the AFDC program itself. O. B. R. A. deleted, from section 402(a)(7), the phrase "as well as any expenses reasonably attributable to the earning of such

income." O. B. R. A. added, to section 402(a)(8), a provision requiring the states to disregard

> ... from the earned income of any child or relative applying for or receiving aid to families with dependent children, or of any other individual (living in the same home as such relative or child) whose needs are taken into account in making such determination, the first $75 of the total of such earned income for such month.... [and]

> ... an amount equal to expenditures for care in such month for a dependent child, or an incapacitated individual living in the same home as the dependent child, receiving aid to families with dependent children and requiring such care for such month, to the extent that such amount (for each such dependent child or incapacitated individual) does not exceed $160....

42 U.S.C.A. § 602(a)(8)(A)(ii) & (iii) (West Supp. IV, pt. 2, 1981). O. B. R. A. maintained intact the disregard of earned income of dependent students receiving aid. *See id.* § 602(a)(8)(A)(i). The disregard of $30 of earned income plus one-third of the remainder thereof, formerly found in section 402(a)(8)(A)(ii) (1980), was altered somewhat and reenacted in section 402(a)(8)(A)(iv) (1982). The amendment provides for the disregard of the first $30 of earned income, *not already disregarded under other provisions of paragraph 8 of section 402(a)* (1982), plus one-third of the remainder thereof. *Id.* § 602(a)(8)(A)(iv). O. B. R. A. also provided with respect to this disregard that the states

> shall not disregard, under subparagraph (A)(iv), any earned income ... if, with respect to such month, the income of the persons so specified was in excess of their need, as determined by the State agency pursuant to paragraph (7) (without regard to subparagraph (A)(iv) ...), unless the person received aid under the plan in one or more of the four months preceding such month and paragraph (A)(iv) has not already been applied to their income for four consecutive months while they were receiving aid under the plan;

*Id.* § 602(a)(8)(B)(ii)(I). O. B. R. A. further provided that

> in the case of the earned income of a person with respect to whom subparagraph (A)(iv) has been applied for four consecutive months, [the State] shall not apply the provisions of subparagraph (A)(iv) for so long as he continues to receive aid under the plan ... until the expiration of an additional period of twelve consecutive months during which he is not a recipient of such aid.

*Id.* § 602(a)(8)(B)(ii)(II). O. B. R. A. eliminated the provision of the pre-O. B. R. A. "disregard" section, which permitted states to allow portions of earned income to be set aside for future needs. *See id.* § 602(a)(8)(B).

The procedure for calculating the AFDC grant of an eligible family has been described in *Ram v. Blum,* 533 F.Supp. 933 (S.D.N.Y.1982):

> The statute contemplates a four step process for calculating the amount of an eligible family's monthly AFDC grant. *First,* the state determines a dollar figure that represents the family's monthly 'income', as that term is used in Section 402(a)(7)(A). This is the step at issue in the case before the Court. *Second,* the state reduces this dollar figure by a 'work expense deduction' calculated in accord with 42 U.S.C. § 602(a)(8)(A)(ii) and 42 U.S.C. § 602(a)(8)(A)(iii), as those sections were enacted by Section 2301 of the Omnibus Budget Reconciliation Act of 1981. *Third,* the resulting dollar figure is further reduced by a 'work incentive deduction' calculated in accord with 42 U.S.C. § 602(a)(8)(A)(iv), as that section was enacted by Section 2301 of the Omnibus Budget Reconciliation Act of 1981. The 'work incentive deduction' is only applied during the first four months of a family's AFDC eligibility. *See* Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, § 2301, 95 Stat. 844 (1981), 42 U.S.C. § 602(a)(8)(B)(ii). *Fourth,* the resulting dollar figure is compared to the 'standard of need' for a family of the

same composition. The amount of the family's monthly AFDC grant is the amount by which the standard of need exceeds the dollar figure obtained by engaging in the first three of the four steps just recited.

*Id.* at 23–24.

### F. Revised Regulations

H.H.S. issued interim rules on September 21, 1981 designed to implement the AFDC amendments made by O. B. R. A. *See* 46 Fed.Reg. 46,750–73 (1981). The final H.H.S. regulations were not published in the Federal Register until February 5, 1982. *See* 47 Fed.Reg. 5648–86 (February 5, 1982).

The revised H.H.S. regulations extensively amend 45 C.F.R. § 233.20 (1980), which set forth the method of determining (1) whether a family is eligible for AFDC benefits, and (2) the amount of any AFDC monthly grant. The section of the regulations which explains the method of calculating an eligible family's monthly AFDC grant includes a subsection entitled "Income and Resources." *See* 45 C.F.R. § 233.20(a)(3), *as amended by* 47 Fed.Reg. 5648, 5674–76 (1982). This subsection, pre-O. B. R. A. and post-O. B. R. A., includes the provision upon which plaintiffs principally rely: "A State Plan for ... AFDC ... must ... provide that, in determining need and the amount of the assistance payment, ... *net income* ... *available for current use* ... shall be considered." 45 C.F.R. § 233.20(a)(3)(ii)(D) (1982) (*emphasis added*). These and related regulations are discussed in detail below.

### G. Amendments to MPAPM

By memorandum dated November 30, 1981 the Commissioner sought to amend MPAPM, effective January 1, 1982, so as to incorporate the changes mandated by O. B. R. A. A Notice of Rulemaking Proposal, attached to Defendant's Memorandum as I–1, was published December 20, 1981. The Commissioner submitted the Maine plan to H.H.S. and it was approved December 31, 1981. The Commissioner filed emergency rules with the Maine Secretary of State on December 31, 1981. A public hearing on the proposed new rules was held January 15, 1982.

The revised version of Chapter II, section C of the MPAPM alters the definition of "income" in various ways. Whereas the MPAPM formerly provided that "income which is *available* will be considered ...," the amended MPAPM deletes this language and states: "All income as defined in this Chapter will be considered available to meet the present and future needs of AFDC recipients." MPAPM, Chapter II, section C, (1982) at 1. MPAPM presently provides that all income will be redetermined at least every 3 months. *Id.* at 4.

Under the amended MPAPM method for determining the income of an AFDC-eligible family, D.H.S. first determines the gross earned income (i.e., total monthly salary or wages) of each family member. *Amounts mandatorily deducted from paychecks are considered "earned income,"* in calculating the amount of an eligible family's monthly grant. This gross figure is reduced by

■ The first $75.00 per month of the income earned by all individuals (other than students) whose needs are included in the assistance grant ... with the exception of those individuals employed less than 20 hours per week ... [in which case] the first $38.00 per month of the income earned will be disregarded; and

■ The actual cost, but not to exceed $160.00 per month, for the care of each dependent child or incapacitated adult living in the same home and *receiving AFDC,* with the exception of those individuals employed less than 20 hours per week ... [in which case] the actual cost, but not to exceed $80.00 per month, for the care of each dependent child or incapacitated adult living in the same home *and receiving AFDC,* [will be disregarded]; and

■ For individuals found otherwise eligible to receive assistance or who have received assistance in one of the four months prior to the month of application, the agency will also disregard

from the individual's earned income $30.00 plus one-third of his/her earned income *not already disregarded; with [certain exceptions]* . . . .

The net amount remaining plus all unearned income will be considered in determining eligibility and grant amount. Application Pre-Test: On an AFDC application, there is a preliminary step to determine whether eligibility exists without application of any disregard.

1. Subtract assistance unit's total gross income, without benefit of any disregard, from 150% of total requirement as indicated in the cost chart.

2. If this test cannot be met (total income of assistance unit is more than 150% of full need) the family is ineligible for AFDC.

3. If the gross income pre-test is met subtract appropriate work related expenses from earned income.

4. Add the balance to 'unearned income'.

5. If the total of (3) and (4) is less than "total requirement", (full need), the individual has met the full need pre-test and is entitled to the 30⅓ disregard. If the total of (3) and (4) is equal to or greater than total requirements (full need), the family is ineligible for AFDC.

If the full need pre-test is met net income is then deducted from the *full* need standard in determining amount of payment.

*See* MPAPM, Chapter II, § C, pp. 9–10A.

On February 1, 1982, D.H.S. ceased applying the work-incentive disregard ["the $30 plus ⅓" disregard] to those persons with respect to whom the pre-O. B. R. A. work-incentive disregard had been applied from October 1, 1982 through January, 1982.

H. *Post-O. B. R. A. Calculations of Plaintiffs' Benefits*

In accordance with the revised MPAPM, which was made applicable to calculations of benefits on and after February 1, 1982, plaintiff Karen Sleeper's grant was calculated by the Commissioner, effective February 1, 1982, as follows:

| | |
|---|---|
| Gross income | $688.95 |
| $75 standardized work expense | −75.00 |
| Balance | $613.95 |

Because $613.95 exceeds the standard of need for a family of one adult and three children (i.e., $522), the grant of plaintiff Karen Sleeper was terminated.

The named plaintiffs, Brenda Dickenson, Karen Sleeper and Donna Irish, have had their AFDC benefits reduced or terminated, effective February 1, 1982, as a result of the fact that the Commissioner calculated their eligibility and their grant amounts without disregarding from their earned income $30 plus one-third of their earned income not already disregarded. Each of these named plaintiffs would have been eligible for larger AFDC benefits had the "$30 plus ⅓" disregard been calculated by the Commissioner in determining their eligibility and their grant amounts. The AFDC benefits of plaintiff Susan Magoon will be reduced in March, 1982 for the same reason.

The records of the D.H.S. reflect the following information. There were three persons on the Brenda Dickenson AFDC grant from September, 1981 through January, 1982. Her monthly grant was $125; her gross earned income $606.62 per month. Taxes were withheld in the monthly amount of $136.54. She had actual work expenses of $72.15 for those months and would have been allowed a standard $75 work-expense disregard in February. For the months September through January she was allowed a "$30 plus ⅓" disregard of $222.21. Her AFDC grant was terminated effective February 1, 1982.

There were four persons on the Susan Magoon AFDC grant. From December, 1981 through January, 1982 her monthly grant was $147 and she had gross monthly income of $653.42. Taxes were withheld in the monthly amount of $62.44. She had actual work expenses for each of those months of $13.87 and child-care expenses of $108.33. She was allowed a "$30 plus ⅓" disregard of $237.81 for each month. Ef-

fective February 1, 1982 she was allowed a standard $75 work-related expense disregard and her grant was reduced, but under the new regulation she was allowed a "$30 plus ⅓" disregard of $179.80 and received what the Commissioner contends was an overpayment.

There were four persons on the Donna Irish AFDC grant. From October, 1981 through January, 1982, her monthly grant was $359 and she had gross earned income of $642.28 per month. Taxes were withheld in the amount of $160.02 per month. She had work-related expenses of $56.17 and child-care expenses of $173.32. She was allowed a "$30 plus ⅓" earned-income disregard of $324.09. Effective February 1, 1982, she was allowed a standard work-related expense disregard of $75 and her grant was reduced to $128.

The Donna Irish grant for February, 1982 was less than it would have been had she been allowed to deduct mandatorily withheld state and federal taxes and F. I. C. A. from her gross income in addition to the $75 standard work-expense disregard. The Susan Magoon grant for March, 1982, will be less than it would be were she allowed to deduct withholding taxes in addition to the standard work-expense disregard.

Brena Dickenson and Karen Sleeper would have been eligible for benefits in February, 1982, regardless of the treatment given to the "$30 plus ⅓" earned-income disregard, if they had been allowed to deduct mandatorily withheld taxes and F. I. C. A. from their gross incomes in addition to the $75 standard work-expense disregard.

## II

## LAW

### A. *Preliminary Injunctive Relief*

The criteria controlling the appropriateness of preliminary injunctive relief are enunciated in *Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981), *quoting Women's Community Health Ctr., Inc. v. Cohen*, 477 F.Supp. 542, 544 (D.Me.1979):

[i]n the First Circuit, a plaintiff must satisfy four criteria in order to be entitled to a preliminary injunction. The Court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.

### 1. *Irreparable Harm*

With respect to the first element of the *Bellotti* test, the defendants concede that plaintiffs would suffer irreparable harm if a preliminary injunction does not issue, in the event the Commissioner is in error in the method used to compute post-O. B. R. A. AFDC benefits. *See Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Thiboutot v. State of Maine*, Me., 405 A.2d 230 (1979). *Cf. Coalition for Basic Human Needs v. King*, 654 F.2d 838, 841 (1st Cir. 1981) [irreparability of harm due to denial of AFDC benefits "excruciatingly obvious"].

### 2. *Balancing the Hardship; the Public Interest*

In AFDC cases the possibility of hardship to the defendant and "public interest" considerations do not "loom large." 654 F.2d at 841. Nevertheless, the court would observe that the balance of hardships tips decidedly in favor of the plaintiffs. Any overpayments which defendants might be required to make if preliminary injunctive relief were improvidently granted could be redressed either by means of deductions from future AFDC payments or by legal action. The adverse impact upon the defendant of any actual losses thus incurred does not compare with the almost certain permanent economic loss to the plaintiffs should preliminary injunctive relief have been improvidently withheld. *See Quern v.*

*Jordan,* 440 U.S. at 343, 99 S.Ct. at 1146; *Edelman v. Jordan,* 415 U.S. at 667, 94 S.Ct. at 1357; *Thiboutot v. State of Maine,* 405 A.2d at 237. Given the great immediacy of the financial needs of AFDC-eligible families and the unlikelihood that AFDC-eligible families would be able to effect retroactive recoveries of AFDC underpayments, coupled with the likelihood that the defendant could recover a substantial portion of any AFDC overpayments, the court concludes that the balance-of-hardship test poses no obstacle to preliminary injunctive relief.

### B. Likelihood of Success

■ The central inquiry is "whether plaintiffs have shown a probability of prevailing on one or more of their claims." *Coalition for Basic Human Needs v. King,* 654 F.2d at 841. The plaintiffs must demonstrate, at the very least, a "substantial possibility" of prevailing on the merits, *see UV Industries, Inc. v. Posner,* 466 F.Supp. 1251, 1256 (D.Me.1979) [Gignoux, J.], or, more precisely in the present context, "a probability of success,"[4] *Clintron-Garcia v. Romero-Barcelo,* 671 F.2d 1, 4 n.2 (1st Cir. 1982). The likelihood of success on the merits looms large in the path of preliminary injunctive relief under the law of the First Circuit, *Auburn News Company v. Providence Journal Company,* 659 F.2d 273, 277 (1st Cir. 1981); particularly, it would seem, in cases involving AFDC benefits, *see Coalition For Basic Human Needs v. King,* 654 F.2d at 841.

Plaintiffs allege a likelihood of success in establishing on the merits that:

1. Their $75 work-expense disregard is in addition to a payroll-withholding disregard;

2. The four-month life of the new "$30 plus ⅓" disregard begins only after

the Commissioner properly promulgates new implementing regulations [MPAPM]; and

3. The new MPAPM promulgated by the Commissioner did not become effective until January 25, 1982, since there was no compliance by the Commissioner with the Maine Administrative Procedure Act, 5 M.R.S.A. § 8001 *et seq.,* prior to that date.

The court concludes, on the reasoning related below, that there is no likelihood (1) that "income," as used in section 402(a)(7)(A), means net income; or (2) that the four-month "$30 plus ⅓" disregard is to take effect from the date of the promulgation of amendatory regulations implementing the O. B. R. A. amendments. The court further concludes that compliance by the Commissioner with the A.P.A. is not relevant to a determination of plaintiffs' entitlement to the claimed AFDC benefits.

### 1. Mandatory Payroll Withholdings

■ The contention that mandatory payroll withholdings (state and federal income taxes and F. I. C. A. withholdings) are to be deducted from gross income *over and above* the disregards from earned income required by section 402(a)(8) of the Social Security Act is based on the pre- and post-O. B. R. A. requirement in section 402(a)(7) that the states, in determining need, shall "take into consideration any other income and resources..." of those whose needs the state determines are to be considered. Plaintiffs argue that this provision limits the states to a consideration of net income actually available for current use, exclusive of mandatory payroll withholdings. Their argument is based on a longstanding regulation of the H.H.S., 45 C.F.R. § 233.20(a)(3)(ii)(D), and on judicial interpretations of the phrase "any other income and resources," in section 402(a)(7).

---

**4.** The First Circuit test is more demanding of plaintiffs than that in the Second Circuit, where preliminary injunctive relief may be granted on the strength of a showing of "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balancing of hardship tipping decidedly toward the party requesting the preliminary relief." *Women's Community Health Center, Inc. v. Cohen,* 477

F.Supp. 542, 544 n.1, *quoting, International Hotels Corp. v. Wellington Associates,* 483 F.2d 247 (2d Cir. 1973). The recent grant of preliminary injunctive relief in *Ram v. Blum,* 533 F.Supp. 933 (S.D.N.Y.1982), under circumstances very similar to those in the present case, may be explainable largely on the basis of the application in *Ram* of the less stringent Second Circuit test.

45 C.F.R. § 233.20, in its pre-O. B. R. A. and post-O. B. R. A. form before February 5, 1982, when the H.H.S. regulations were made final, provided as follows:

§ 233.20 *Need and amount of assistance.*

(a) *Requirements for State Plans.*

A State Plan for· ... AFDC ... must, ...

(3) *Income and Resources* :

.    .    .    .    .

(ii) Provide that, in determining need and the amount of assistance payment, after all policies governing the reserves and allowances and disregards or setting aside of income and resources referred to in this section have been informally applied:    .

(A) ... all remaining income and resources shall be considered in relation to the State need standard;

.    .    .    .    .

(D) Net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance. . . .

Under the final H.H.S. regulations issued February 5, 1982, 42 C.F.R. § 233.-20(a)(3)(ii)(D) (1981) was amended to provide that a state plan for AFDC must

(ii) Provide that, in determining need and the amount of assistance payment . . .

.    .    .    .    .

(D) Net income, except as provided in paragraph (a)(3)(xii) of this section, [not relevant here] and resources available for current use shall be considered. . . .

47 Fed.Reg. 5648 at 5675 (1982) [to be codified at 42 C.F.R. § 233.20(a)(3)(ii)(D) ] (*bracketed language added* ). Thus the current H.H.S. regulations still provide that states consider "net income ... available for current use." The wording of the section has been changed but "net income" still appears to be modified by the phrase "available for current use."

Plaintiffs assert that payroll withholdings have never been treated as work-related expenses during the entire history of the AFDC program, *see* hearing transcript, pp. 32–33, and that no mention is made of payroll withholdings in a 1962 H.E.W. *Handbook of Public Assistance Administration* (*see* Supplementary Appendix O to complaint filed February 24, 1982), which discussed the "work-related expenses" that the states would be required to consider under the 1962 amendment to section 402(a)(7). Plaintiffs also contend that the regulation requiring the states to consider "net income available for current use" is mandated by statute and that it precludes consideration of mandatory payroll withholdings in calculating need, because such withholdings are neither "net income" nor actually available for current use, nor does the recipient have the legal ability to make such sums available.

The plaintiff's argument, however ingenious, does not comport with the Social Security Act provisions at issue, or with Supreme Court interpretations of those provisions, or with the treatment historically accorded to payroll withholdings under MPAPM.

The Supreme Court has traced the method to be used in calculating AFDC income and expenses in its unanimous decision in *Shea v. Vialpando*, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974):

The 'income and resources' attributable to an applicant, defined in 45 C.F.R. §§ 233.20(a)(6)(iii–viii), consist generally of 'only such net income as is actually available for current use on a regular basis ... and only currently available resources.' In determining net income, any expenses reasonably attributable to the earning of income are deducted from *gross* income. 42 U.S.C. § 602(a)(7). If, taking into account these deductions and other deductions not at issue in the in-

stant case,[5] the net amount of 'earned income' is less than the predetermined statewide standard of need, the applicant is eligible for participation in the program and the amount of the assistance payments will be based upon that difference. 45 C.F.R. §§ 233.20(a)(3)(ii)(A) & (c).[6]

■ The *Shea* decision suggests that plaintiffs' argument regarding payroll withholdings is ill founded. The Court began its calculation by defining "income and resources" in accordance with H.E.W. regulations, one of which provided in 1974, as it still does, that:

> With reference to commissions, wages, or salary, the term 'earned income' means the total amount irrespective of personal expenses, *such as income-tax deductions,*

lunches and transportation to and from work....

45 C.F.R. § 233.20(a)(6)(iv) (1974) (1982). "Earned income," which includes tax withholdings, is thus a subset of the more general category of "income."[7] *A fortiori,* "income" in section 402(a)(7) includes tax withholdings. The term "net income" in the 1974 regulations, *see* 45 C.F.R. § 233.-20(a)(3)(ii)(C) (1974), referred to gross income, net of the disregards and "expenses reasonably attributable to the earning of such income." Under current regulations, because the phrase "expenses reasonably attributable to the earning of such income" *has been repealed by O. B. R. A.,* "net income" in 45 C.F.R. § 233.20(a)(3)(ii)(D) (1982) means gross income net of the disregards of subparagraph (a)(8).[8]

**5.** Presumably the Court was referring to the income disregards of section 402(a)(8) [student income and the "$30 plus $1/3$" disregard], which were not at issue in *Shea.*

**6.** 416 U.S. at 254, 94 S.Ct. at 1750 (*emphasis added*). The regulation considered in *Shea* differs but slightly from the regulation in effect until February 5, 1982. The portion of the regulation quoted in *Shea* provides that "only such net income actually available for current use on a regular basis" shall be considered. The 1981 regulation, relied upon by the plaintiffs, does not contain the word "only," but provides that "[n]et income available for current use ... shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance." Although the 1981 regulation is only slightly different from that considered in *Shea,* that difference may be significant. The 1981 regulation could be construed as a directive to consider net income available for current use, but not necessarily as forbidding consideration of income other than net income available for current use.

**7.** In 1971, the Ninth Circuit upheld an H.E.W. [H.H.S.] regulation requiring that disregards from earned income under section 402(a)(8)(A) be made from the gross amount of earned income before deducting work expenses, *Arizona State Department of Public Welfare v. Department of Health, Education and Welfare,* 449 F.2d 456 (9th Cir. 1971), explaining that

> ... we think it entirely reasonable for the Secretary to interpret "earned income" in the Act's disregard provisions, 42 U.S.C.

§ 602(a)(8)(A), as referring to gross earned income. Nothing in the legislative history negates this broader reading of "earned income," and common usage supports it. *See* Webster's Third New International Dictionary 714 (1965).

*Id.* at 470 n.21.

**8.** The structure of the current regulation also indicates that the "net income" referred to in 45 C.F.R. § 233.20(a)(3)(ii)(D) (1982) means gross income less disregards. The directive to consider "net income ... available for current use" applies "*after* all policies governing ... disregards ... have been uniformly *applied.*" 45 C.F.R. § 233.20(a)(3)(ii)(D) (1982) (*Emphasis added.*) It would make little sense to apply disregards to earned (gross) income and then to consider only net income in the sense of gross income minus withholdings.

Even if 45 C.F.R. § 233.20(a)(3)(ii)(D) is construed as a directive to consider only "net income available for current use" and to disregard taxes withheld from income, the court would have to hold that the disregards of section 402(a)(8) are to be deducted from *gross* income. As noted, the directive that "net income available" be considered comes into play only *after the policies governing disregards have been applied. See* 45 C.F.R. § 233.-20(a)(3)(ii). The policy governing disregards clearly contemplates deductions being made from gross income. *See* 45 C.F.R. § 233.-20(a)(6)(iv). The only circumstance in which the court could faithfully follow the structure of the current regulation and at the same time apply the plaintiffs' interpretation of the phrase "net income ... available for current use," so as to augment the benefits available to some recipients, would be where the "earned in-

If the *Shea* definition of income does not, of itself, refute plaintiffs' argument, the rationale of the opinion and its citation of the treatment of tax withholdings under various state AFDC programs would seem to be conclusive. The issue in *Shea* was whether the State of Colorado, by standardizing various employment expenses at a level of $30 per month, and, in effect, setting a maximum limitation on the recognition of work expenses, violated the provision of the Social Security Act requiring that the state consider "any expenses reasonably attributable to the earning of income." Before May, 1970, Colorado AFDC regulations had permitted the deduction from income, on an individualized basis, of transportation costs, child-care expenses, "mandatory payroll deductions ... and all such expenses," as work-related expenses. *Id.* at 254, 94 S.Ct. at 1750. In July, 1970, Colorado standardized, at a level of $30 per month, all deductible work-related expenses, except childcare and payroll deductions.[9] In describing the Colorado regulation the Court implicitly recognized payroll deductions as work-related expenses:

> ... while Colorado continued to individualize treatment of mandatory payroll deductions and child-care costs, all *other work-related expenses* were subjected to a uniform allowance of $30. ...

*Id.* at 255, 94 S.Ct. at 1751 (*emphasis added*). The Court traced the history of the provisions of the Social Security Act relating to the recognition of income and expenses, noting that, when enacted in 1935, the Act "did not expressly require that the states allow AFDC beneficiaries to deduct *from gross income* expenses incurred in connection with the earning of income." *Id.* at 258, 94 S.Ct. at 1752 (*emphasis added*). In fact, not until 1939 was an amendment added to the Act to provide that "the state agency shall, in determining need, take into consideration any other income and resources of any child claiming aid to dependent children." *Id.* at 258–59, 94 S.Ct. at 1752.[10] In 1957, recognizing the potential work disincentive inherent in regulations which considered gross income for purposes of limiting AFDC eligibility and benefits, but which did not require a disregard of "certain employment-related expenses that

come" disregards of (a)(8) did not cover all payroll taxes actually withheld and, therefore, to the extent not covered by the disregard, taxes withheld could be considered not currently available. Certain of these plaintiffs apparently have had monthly tax withholdings in excess of the $75 standardized disregard. *See* stipulations filed February 24, 1982 # 4; Affidavit of Karen Sleeper filed February 17, 1982. The court, however, rejects even this limited augmentation of benefits pursuant to 45 C.F.R. § 233.20(a)(3)(ii)(D). As noted elsewhere, the limitation in the regulations regarding current availability is directed at requiring that *sources of income* be currently available, leaving to other regulatory prescription and to the Act itself the formula for the computation of the quantum of income from currently available income sources. *See* note 13 *infra.*

9. The Court pointed out in *Shea v. Vialpando*, 416 U.S. at 255 n.3, 94 S.Ct. at 1751 n.3, that in 1974, according to H.E.W., standardized work-expense deductions were in effect in twenty states "in combination with actual child care expenses, and in some cases *mandatory payroll deductions,* and an additional 15 states use[d] other systems of mandatory standard allowances for one or more major items of work expenses."

10. The phrase "any other income" refers to any income *other than AFDC income.* It does not mean merely income other than earned income. *See Shea v. Vialpando,* 416 U.S. 251, 261, 94 S.Ct. 1746, 1754, 40 L.Ed.2d 120 (1974) [Congress intended to ensure that the amount of assistance be based on the AFDC benefits needed after all other income and resources were considered].

It is also significant to note that the 1939 amendment was added to the AFDC statute "to assure that benefits were available only to needy children," *National Welfare Rights Organization v. Mathews,* 533 F.2d 637, 642 (D.C. Cir.1976), and to assure that "no Little Orphan Annie will receive public assistance if she has a Daddy Warbucks." *Arizona State Department of Public Welfare v. HEW,* 449 F.2d 456, 469 n.19 (9th Cir. 1971), *cert. denied,* 405 U.S. 919, 92 S.Ct. 945, 30 L.Ed.2d 789 (1972). This legislative history would tend to support the broad definition of "income" in *Shea,* and to refute the plaintiffs' argument in favor of a more limited definition. *See also* December 17, 1940 Memorandum of Social Security Board Acting Secretary (Appendix J to Plaintiffs' memorandum) [intent of 1939 amendment was to prevent states from directing AFDC agencies to disregard income and resources].

would reduce available income," *id.* at 259, 94 S.Ct. at 1753, the Social Security Board issued a ruling *permitting* the states to disregard work-related expenses in determining eligibility. *Id.* at 259, 94 S.Ct. at 1753. In 1962 Congress added to section 402(a)(7) the phrase "as well as expenses reasonably attributable to the earning of such income...." *Id.* at 260, 94 S.Ct. at 1753. "Congress [thereby] made mandatory the widespread but then optional practice of deducting employment expenses from *total income* in determining eligibility for [AFDC] assistance." *Id.* at 260, 94 S.Ct. at 1753 (*emphasis added*). In using the word "any" in the 1962 amendment, Congress intended to place "no limitation, apart from that of reasonableness, . . . upon the recognition of expenses attributable to the earning of income." *Id.* at 260, 94 S.Ct. at 1753. Just as Congress was "careful to ensure that *all* of the income and resources properly attributable to a particular applicant [were] taken into account," *id.* at 251, 94 S.Ct. at 1746, as reflected in H.E.W.'s [now H.H.S.'s] "broad definition of 'earned income' . . . and its more specific descriptions of commissioned, salaried and self-employment derived income...," *id.* at 261, 94 S.Ct. at 1754, so Congress also intended that all expenses be considered, *id.* at 262, 94 S.Ct. at 1754.[11]

*Shea* sets out the legislative history of the 1962 amendment in support of the Court's literal construction of "all expenses" as used in 42 U.S.C. § 602(a)(7) (1974):

> The congressional purpose in requiring the States to take into consideration employment expenses was clearly set forth in S.Rep.No.1589, 87th Cong., 2d Sess., 17–18 (1962), which explained:

'Under present law . . . States are permitted, but not required, to take into consideration the expenses an individual has in earning any income (this practice is not uniform in the country and in a substantial number of States full consideration of such expenses is not given). The committee believes that it is only reasonable for the States to take these expenses fully into account. *Under existing law if these work expenses are not considered in determining need, they have the effect of providing a disincentive to working since that portion of the family budget spent for work expenses has the effect of reducing the amount available for food, clothing, and shelter.* The bill has, therefore, added a provision in all assistance titles requiring the States to give consideration to any expenses reasonably attributable to the earning of income.' (Emphasis added.)

Virtually identical language appears in the House Report. See H.R.Rep.No.1414, 87th Cong., 2d Sess., 23 (1962).

*Id.* at 263, 94 S.Ct. at 1755.

On the basis of the legislative history leading to the adoption in 1962 of the work-expense deduction, Justice Powell concluded that—

> Congress thus sought to encourage AFDC recipients to secure and retain employment by requiring the States to take into account fully any expenses attributable to the earning of income in determining eligibility for assistance. Such expenses reduce the level of actually available income, and if not deducted from *gross income*, will not produce a corresponding increase in AFDC assistance.

11. The Tenth Circuit opinion in *Vialpando v. Shea*, 475 F.2d 731, 734 n.1 (10th Cir. 1973), also describes the intended breadth of "income" and "expenses":

> When considering the 1962 amendment which added the employment expense provision, Congress specifically recognized that '*all* income of recipients . . . is taken into account . . . in determining need.' S.Rep.No. 1589, 87 Cong., 2d Sess., 1962 U.S.Code Cong. & Admin.News, pp. 1943, 1959 (*emphasis added*). Thus Congress intended that

*all* employment expenses also be considered. See 45 C.F.R. § 233.20(a)(7)(i).

The Tenth Circuit also stated:

> An AFDC grant is computed by comparing a family's income and resources to a standard of need statistically determined by the state. The family income used in this comparison is *gross family income* less certain exclusions mandated by 42 U.S.C. § 602(a)(7), an employment expense provision, and 42 U.S.C. § 602(a)(8), an income disregard provision. *Id.* at 733 (*emphasis added*).

*Id.* at 264, 94 S.Ct. at 1755 (*emphasis added* ).

Thus, in *Shea,* the Supreme Court—

1. defined "income" as including "earned income;" and "earned income" as including tax withholdings;
2. implicitly recognized mandatory payroll deductions, such as tax withholdings, as work-related expenses under pre-O. B. R. A. law;
3. noted that many states in 1974 were treating such payroll deductions as work expenses;
4. outlined the history of a developing recognition of work-related expenses, culminating in the 1962 amendment *requiring* that states deduct all work-related expenses from gross income; and
5. emphasized that Congress intended to give a broad definition to both "income" and "expenses" in section 402(a)(7).

The penumbra of the *Shea* opinion appears to preclude a holding that "income," as used in section 402(a)(7), does not include mandatory payroll deductions, such as tax withholdings.

Further support for the defendant's position is found in the legislative history of the O. B. R. A. amendments and in the MPAPM treatment of payroll withholdings as work-related expenses prior to the enactment of O. B. R. A.

▮ A congressional report describing the O. B. R. A. amendments to the AFDC program makes clear that the states, in determining eligibility and benefits, are to begin their computations with gross income and then deduct certain sums therefrom. The report, entitled "Joint Explanatory Statement of the Committee of Conference," issued by a Conference Committee appointed to reconcile disagreements between the House and the Senate, provides as follows:

1. Disregards from earned income for AFDC . . .

.       .       .       .       .

Current law provisions requiring States to disregard certain amounts of earned income for purposes of determining benefits in the AFDC program would be amended to standardize the work expense disregard at $75 per month for full time employment, cap the child care disregard at $160 per month, and change the order of the $30 plus one-third disregard.

States would be required to disregard the following amount of earnings, in the following order:

(a) *Eligibility Determination*—the first $75 of monthly earnings for full time employment (in lieu of itemized work expenses); and the cost of care for a child or incapacitated adult, up to $160 per child per month.

(b) *Benefit Calculation*—the first $75 of monthly earnings for full time employment; child care costs up to $160 per child per month; and $30 plus one-third of earnings not previously disregarded.

The $30 plus one-third disregard would only be allowed during the first 4 consecutive months in which a recipient has earnings in excess of the standard work expense and child care disregards. After 4 months, the benefit would be determined without the $30 plus one-third disregard for each month the family continues to receive AFDC and for 12 consecutive months after AFDC is terminated.

.    .    .    .    .

3. Income limit for AFDC eligibility

.    .    .    .    .

Eligibility for AFDC would be limited to families with gross incomes at or below 150 percent of the State's standard of need.

127 Cong.Rec.No.116—Part II H5713 (daily ed. July 29, 1981). No mention is made in this report, in the O. B. R. A. amendments, or in the new H.H.S. regulations, of any calculation pertaining to "earned income" other than the disregard of $75 in lieu of work-related expenses, the disregard for child-care expenses and the four-month "$30 plus ⅓" disregard. It is difficult to accept the strained construction urged by plaintiffs, that Congress prescribed that

these disregards be made from gross income, but actually intended that the states also deduct mandatory payroll withhold-

12. In holding that "income", as used in section 402(a)(7), includes taxes mandatorily withheld from income, the court notes a recent decision of the Southern District of New York to the contrary. *See Ram v. Blum*, 533 F.Supp. 933 (S.D.N.Y.1982). In light of *Shea*, which appears not to have been brought to the attention of the court in *Ram v. Blum*, this court must respectfully disagree. *See also* note 7 *supra.*

*Ram* relies heavily upon the 1939 amendment to the AFDC statute, which added for the first time the requirement that states consider "any . . . income and resources [other than AFDC payments] of any child claiming [AFDC]." *Id.* at 944, *quoting* section 401(b) of the Social Security Act Amendments of 1939, Pub.L. No. 76–379, 53 Stat. 1360, 1379–80 (1939). The court in *Ram* infers from the administrative interpretation of the word "income" [income "actually existing and available"] under a ruling of the Social Security Board issued soon after the enactment of the 1939 amendments, that the intent of Congress in 1939 was not to include taxes withheld within the definition of "income". *Ram* states that

The Social Security Board took the position that the word 'income' as used in this section of the Social Security Act, referred to net income.

*Id.* at 945. *Ram* reasons that since the Social Security Board that issued these regulations had itself proposed the 1939 amendment, the Congress likely had the same intent in enacting the amendment. Since the word "income" has not been changed in the statute since 1939, *Ram* concludes that the legislative history of the 1939 amendment is most relevant in determining the meaning of the word "income," *id.* at 947, and thus, even though the court in *Ram* recognizes that there is legislative history strongly suggesting that Congress evidenced its intent in O. B. R. A. that "income" means *gross* income, *see Ram v. Blum*, 533 F.Supp. 933, 947, 948 (S.D.N.Y.1982), the intent of the 1939 Congress controls. *Id.* at 947 & 948.

Although this court has searched the Social Security Board rulings of 1940, to which it appears Judge Ward had reference in *Ram, see* Supplementary Appendix J and K to Complaint (in present case), we can find no Board ruling interpreting "income" as *excluding taxes* withheld. Even if such a ruling exists, this court believes that the subsequent history of the AFDC statute, as outlined in *Shea*, demonstrates that payroll withholdings were to be included as income, were to be deducted from income after the 1962 amendments as expenses reasonably attributable to the earning of such "income" [§ 402(a)(7)], and, upon the repeal, by O. B. R. A., of the "expenses reasonably attributable" clause, were standardized in the

ings.[12] The cases plaintiffs cite in support of their position add no weight to their contention.[13]

form of a $75 deduction under section 402(a)(8).

13. Of the AFDC cases plaintiffs cite in support of their argument that payroll withholdings should not be considered income because such withholdings are not actually available, none involved tax withholdings.

*Lewis v. Martin*, 397 U.S. 552, 555–56, 90 S.Ct. 1282, 1283, 25 L.Ed.2d 561 (1970), involved a state regulation requiring state AFDC officials to consider the income of a nonadoptive stepfather, one assuming the role of a spouse, regardless of whether such income was available for the child's needs. *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), involved a state regulation denying benefits to the dependent children of a mother who cohabits with an able-bodied man, regardless of whether the latter was obliged to contribute support or in fact did contribute support. *Van Lare v. Hurley*, 421 U.S. 338, 346, 95 S.Ct. 1741, 1747, 44 L.Ed.2d 208 (1974), involved a state regulation which created a presumption that a nonpaying lodger in an AFDC recipient's home is contributing to the support of the household. *Green v. Barnes*, 485 F.2d 242, 244 (10th Cir. 1973), involved AFDC treatment of tangible property at its face value, without regard to encumbrances. *National Welfare Rights Organization v. Mathews*, 533 F.2d 637, 647 (D.C. Cir.1974), involved a challenge to an H.E.W. regulation which valued property without regard to encumbrances. *Barron v. Bellairs*, 496 F.2d 1187, 1188 (5th Cir. 1974) (*per curiam*), involved a method for projecting monthly income by averaging the income for the preceding six months, in circumstances where income was otherwise unpredictable. *Reyna v. Vowell*, 470 F.2d 494, 496 (5th Cir. 1972), involved a state plan for computing benefits by improperly assuming that the earnings of resident minors were automatically available to the minors' parents, rather than considering only the earnings actually contributed to the household. *Gilliard v. Craig*, 331 F.Supp. 587 (W.D.N.C. 1971), aff'd., 409 U.S. 807, 93 S.Ct. 39, 34 L.Ed.2d 66 (1972), concerned a state plan which considered, as a resource available to the entire family, child support payments by the father of one of the AFDC mother's seven children who was ineligible for AFDC and whose inclusion in the AFDC family budget was held improper. *Solman v. Shapiro*, 300 F.Supp. 409, 415 (D.Conn.), aff'd., 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969), concerned a state statute requiring consideration of the income of stepparents in determining the need of AFDC recipients, despite the nonexistence of a legal obliga-

## 2. Timing of Application of Work-Incentive Disregard

Plaintiffs' argument that the "$30 plus ⅓" disregard must be applied for four months from the time the Commissioner properly promulgates state regulations im-

tion to support. *National Welfare Rights Organization v. Weinberger*, 377 F.Supp. 861, 868 (D.D.C.1974), involved an H.E.W. regulation in conflict with the "income and resources" clause in permitting states to recoup' overpayments by presuming income or resources to be available when they might not in fact be available. The reasoning of this decision has been rejected by the Fifth Circuit in *Jacquet v. Westerfield*, 569 F.2d 1339, 1342 (5th Cir. 1978).

Each of these cases merely stands for the proposition that the states cannot presume or assume the existence of resources or income *sources*. None purports to limit the definition of "income" with respect to known income *sources*. Thus, the Supreme Court cases merely stand for the proposition that "the Social Security Act precludes treating a person who is not a natural or adoptive parent as a breadwinner 'unless the bread is actually set on the table.'" *Van Lare v. Hurley*, 421 U.S. at 346, 95 S.Ct. at 1747, *quoting, Lewis v. Martin*, 397 U.S. at 559, 90 S.Ct. at 1285. In *King v. Smith*, the Supreme Court observed that the H.E.W. regulation restricting resources to be considered under section 402 to those "in fact available to an applicant or recipient for current use on a regular basis," clearly comported with the statute and excluded consideration of resources merely assumed to be available to the needy individual. 392 U.S. at 319 n.16, 88 S.Ct. at 2134 n.16. Similarly, in *Lewis v. Martin*, 397 U.S. at 558, 90 S.Ct. at 1285, the Court held that states cannot assume that the income of nonadoptive stepfathers would be available to AFDC recipients.

It appears to this court that *the intent of the H.H.S. regulations, in providing that the state plan must consider "net income . . . available for current use," is to exclude from consideration income from sources that are neither actually applied nor required by law to be applied to the support of the AFDC unit whose needs are being considered.* The requirement of "current availability" does not limit the definition of "income," rather it circumscribes the income sources to be considered.

Plaintiffs also cite three state court decisions dealing with the treatment of payroll withholdings under state non-AFDC welfare plans. All three are distinguishable.

In *Watson v. Com. Dept. of Public Welfare*, 42 Pa.Cmwlth. 181, 400 A.2d 669 (1979), the court held that, in computing the net income base from which to determine eligibility and assistance amounts under the Pennsylvania general assistance program, the state should

plementing the O. B. R. A. amendments is based on:

1. the language in section 402(a)(8)(B)(i-i)(II) directing the states not to "apply the provision of subparagraph *(A)(iv)"* to the earned income of persons "with

consider payroll taxes withheld from earnings as income not "actually available for current use," rather than as an expense of earning income. The case is distinguishable from the case at bar because (1) the Pennsylvania *statute* required that income be actually available for current use; (2) income was not as broadly defined under Pennsylvania law as it is under the AFDC statute; and (3) there appears to have been no Pennsylvania legislative history similar to that under the federal AFDC statute to indicate that all calculations are to begin with a determination of gross income.

In *Harbolic v. Berger*, 43 N.Y.2d 102, 400 N.Y.S.2d 780, 371 N.E.2d 499 (1977), the court held that it was improper under the New York Social Services Law to include mandatory payroll withholdings within the category of work expenses, as opposed to their being classified as reimbursable work expenses or as unavailable income. This case is distinguishable from the case at bar because (1) of the legislative history of the New York legislation which "strongly suggest[ed]," *id.* at 502, 400 N.Y.S.2d 102, that the work-expense deduction was not intended to include tax withholdings; and (2) the New York statute required that the determination of the grant amount be measured by available financial resources.

The third case cited by plaintiffs is *Dumbleton v. Reed*, 40 N.Y.2d 586, 388 N.Y.S.2d 893, 357 N.E.2d 363 (1976), in which the court held that, in determining eligibility for medicaid, social security taxes withheld from wages could not be considered income available to the applicant. This case also involved a state statute requiring the consideration of only such income and resources as were available to the applicant or recipient, as well as a federal statute and regulation requiring that state plans take into account only such income, as determined by H.E.W., as is available to the applicant or recipient. The decision is limited to social security withholdings and notes that a special exemption was necessary for the exclusion from consideration of income taxes withheld from wages, since "amounts paid for income taxes can and do come into the possession of a wage earner so that these funds are not strictly unavailable to him. . . ." *Id.* at 365. Three members of the seven-judge panel dissented, stating that it was within the discretion of the New York State Commissioner of Social Services whether to construe social security withholdings as actually available, since current provisions for future needs may well be considered a "resource."

respect to whom subparagraph *(A)(iv)* has been applied for four consecutive months." (*Emphasis added*);

2. the fact that the "$30 plus ⅓" disregard, under amended section 402(a)(8), is to be applied *after* the application of the $75 work-expense disregard and the child-care disregard, whereas the pre-O. B. R. A. "$30 plus ⅓" disregard was deducted from the earnings *prior to* the deduction of other disregards; and

3. the Senate Committee Report on the O. B. R. A. amendments to AFDC which states that—

... the committee amendment would also limit the application of the disregard to the four months in which a recipient has earnings in excess of the standard work expense and child disregards; thereafter, the amount of payment would be determined without benefit of the $30 plus one-third disregard each month that the family continues to receive AFDC and for 12 consecutive months after AFDC is terminated.

Senate Committee Report No. 97–139 (June 17, 1981).

Since the new formula for deducting certain items from earned income, including the "*(A)(iv)*" disregard, was not applied in Maine until February 1, 1982, plaintiffs argue that the Commissioner has violated federal law by not allowing the "(A)(iv)" disregard prospectively for the four-month period February through May, 1982. Plaintiffs argue that it is implicit in the language of the Senate Committee Report that the "$30 plus ⅓" disregard is to be applied from the effective date of the promulgation of the implementing state regulations, because there was no "standard work-expense and child-care disregard" recognized in Maine prior to the promulgation of the revised MPAPM.[14]

Plaintiffs rely on a recent decision of the United States District Court for the District of Minnesota for the proposition that the O. B. R. A. amendments are not effective until properly implemented by the state. In *Minnesota Recipients Alliance v. Noot,* 527 F.Supp. 140 (D.Minn.1981), Minnesota officials were enjoined from reducing, terminating, or denying AFDC benefits without first giving consideration to all actual work expenses and without applying the "$30 plus ⅓" disregard against net, rather than gross, income. On the basis of section 2321(b) of O. B. R. A.,[15] the court held that

---

14. Plaintiffs also argue that, aside from their position that the "(A)(iv)" disregard [$30 plus ⅓" authorized for four months under section 402(a)(8)(A)(iv) (1982)] has never been applied in Maine to AFDC families with respect to whom the old disregard [pre-O.B.R.A. "$30 plus ⅓" disregard authorized by section 402(a)(8)(A)(ii) (1980)] was applied from October through January, the state regulations were not effective until January 25, 1982, because the emergency promulgation of MPAPM regulations on January 1, 1982 was not "necessary to avoid immediate threat to public health, safety or general welfare...." *See* 5 M.R.S.A. § 8054. January 25, 1982 was the termination date of the 10-day comment period following the hearing held January 15, 1982. *See* 5 M.R.S.A. § 8052(1) & (3). It impresses the court as immaterial whether the emergency regulations were promulgated on the 1st or the 15th of January, since there is no evidence that the new regulations were applied prior to February 1, 1982. Secondly, in light of the present holding that the date of the promulgation of regulations is irrelevant for purposes of determining whether "(A)(iv) has been applied" for four months, plaintiffs' pendent claim as to the in-

terpretation of the Maine Administrative Procedures Act need not be addressed at this time.

15. P.L. 97–35 § 2321 provides:

(a) Except as otherwise specifically provided in the preceding sections of this chapter or in subsection (b), the provisions of this chapter and the amendments and repeals made by this chapter shall become effective on October 1, 1981.

(b) If a *State agency* administering a plan approved under Part A of title IV of the Social Security Act *demonstrates,* to the satisfaction of the Secretary of Health and Human Services, *that it cannot, by reason of State law,* comply with the requirements of an amendment made by this chapter to which the effective date specified in subsection (a) applies, the Secretary may prescribe that, in the case of such State, the amendment will become effective beginning with the first month beginning after the close of the first session of such State's legislature ending on or after October 1, 1981. For purposes of the preceding sentence, the term "session of a State's legislature" includes any regular, special, budget, or other session of a State legislature.

(Emphasis added.)

the federal amendments to the AFDC statute could not become effective until the Minnesota legislature had had an opportunity to meet and consider the federal amendments. The court found that Minnesota could not comply with the requirements of the AFDC amendment by reason of (1) a state law requiring that the AFDC grant be determined with due regard to the resources and necessary expenditures of the family, (2) a state statute incorporating by reference the income disregard of *all work expenses*, and (3) a state statute requiring that the "$30 plus ⅓" disregard be deducted from *gross* income. The state agency administering the AFDC plan in Minnesota had, on September 1, 1981, applied to H.H.S. for postponement of the effective date of the O. B. R. A. amendments on the grounds of an alleged conflict with state law. Although H.H.S. had not notified Minnesota officials, as of October 22, 1981, that it was satisfied that state law prevented compliance with the O. B. R. A. amendments, nor prescribed a different effective date, the court seems to have been of the opinion that there was a substantial likelihood that H.H.S. would have had to grant the request due to the contrary provisions of state law.

■ Plaintiffs point to no Maine statute preventing the D.H.S. from complying with the requirements of the O. B. R. A. amendments, nor has the court found any such statute. Furthermore, D.H.S. did not demonstrate to H.H.S. (much less to its satisfaction) that D.H.S. could not comply with the requirements of O. B. R. A. due to contrary provisions of Maine law. Absent a demonstration to H.H.S. that contrary provisions of Maine law preclude compliance, the O. B. R. A. amendments became effective October 1, 1981 by virtue of O. B. R. A. § 2321. Although Maine may not have been in compliance with the federal law between October 1, 1981 and January 1, 1982 or January 22, 1982, this would not affect the effective date of the new "$30 plus ⅓" disregard.

■ Since the four-month limitation on the "$30 plus ⅓" disregard was expressly made effective by federal law on October 1, 1981, those who received the old (larger) disregard from October 1, 1981 through January, 1982 have received their "$30 plus ⅓" disregard for the maximum four-month period now permitted by O. B. R. A. Although the Commissioner appears to have continued to grant the old and somewhat larger "$30 plus ⅓" disregard permitted under pre-O. B. R. A. law, because Maine was not in compliance with the O. B. R. A. amendments until January, 1982, plaintiffs have no grounds to complain that their full, four-month entitlement to the new and somewhat smaller "$30 plus ⅓" disregard has not been allowed for four months.[16] The requested extension of the "$30 plus ⅓" disregard for four more months would have the effect of permitting the states to prolong indefinitely (or until H.H.S. withdraws its approval of a state plan) an entitlement to benefits which the Congress expressly intended to reduce beginning October 1, 1981.[17] As H.H.S. correctly states

---

16. Because the new "$30 plus ⅓" disregard is computed on a fractional basis, the application of the disregard *after* the deduction of other disregards results in a smaller disregard than would be the case if the application were made *before* other deductions. If the new disregard had entitled recipients to *greater* benefits, state agencies could likewise not have delayed the effective date of the federal amendments by failing to amend state regulations for four months after the effective date of the federal law. In that situation, AFDC recipients could have filed suit to compel the larger payments by the state agency and the agency could not have defended on grounds that the disregard was not to be applied until after the adoption of state regulations implementing the changes.

17. Not even the requirements of the Federal Administrative Procedure Act, 5 U.S.C. § 553, can delay the effective date of congressional legislation. The Third Circuit, in *Philadelphia Citizens in Action v. Schweiker*, 669 F.2d 877 at 888 (3d Cir. 1982), held that H.H.S. had good cause to dispense with the A.P.A. notice and comment procedures in promulgating the interim regulations published September 21, 1981, stating:

In short, if the HHS notice and comment policy did override the OBRA effective date, then these procedures would serve to postpone nationwide a major piece of legislation

in its interim regulations of September 21, 1981,

> ... States start counting the four consecutive months as soon as the legislation becomes effective.... The decision was made to permit current recipients (i.e., receiving assistance in September) to receive the $30 plus one-third four consecutive months from October, 1981 through January, 1982.

46 Fed.Reg. 46757 (September 21, 1981). *See also* attachment K to Defendant's Certification of Documents, filed February 21, 1982 [letter from H.H.S. reiterating its position concerning the discontinuance of the "$30 plus ⅓" disregard for those who receive it from October through January, irrespective of the date on which the state implements O. B. R. A.]. This regulation is

which Congress, after full public debate, had decided should be in place by October 1. Neither *Sharon Steel* [*Corp. v. EPA*, 597 F.2d 377 (3d Cir. 1979)] nor *American Iron and Steel* [*Institute v. EPA*, 568 F.2d 284 (3d Cir. 1977)] involved procedural requirements that would forestall implementation nationwide of rules with little substantive effect beyond that of the statutory requirements they adhere to, on a date explicitly and recently set by Congress, relating to a comprehensive federal program.

*Id.* at 886.

**18.** With respect to the Senate Committee Report cited by plaintiffs in support of their position, the court cannot accept the interpretation suggested by plaintiffs. The Senate Report does not deal with the effective date of the "$30 plus ⅓" disregard, but merely states that it is to apply for the four months in which a recipient has earnings in excess of the standard work-expense and child-care disregards. This is a correct statement as to the application of those disregards as they exist across the nation today. It does not, however, shed light on the applicability of the "$30 plus ⅓" disregard between October 1, 1981 and the date of the amendment of the MPAPM.

**19.** It must be noted that in enacting the O. B. R. A. amendments Congress was concerned in part that past work incentives had not proven successful. *See* Senate Committee Report 97–139 (June 17, 1981), quoted at February 24, 1982 hearing on motion for preliminary injunction (transcript pp. 18–19). *See also* note 20 *infra*.

The primary purpose of the OBRA amendments to the AFDC program is to reduce or eliminate welfare benefits for those con-

entitled to great deference by the courts, *see Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 101 S.Ct. 2239, 68 L.Ed.2d 744 (1981); *New York State Dept. of Social Services v. Dublino*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973), particularly in view of the finding here that it comports with congressional intent as plainly indicated by the effective date of the O. B. R. A. amendments to the AFDC section of the Social Security Act.[18]

### III

### CONCLUSION

While the post-O. B. R. A. AFDC formula may not provide as great an incentive to work as existed prior to O. B. R. A.,[19] such is apparently no longer the overriding intent of Congress.[20] At the time of the *Shea*

sidered by Congress to be less needy than those completely without resources—persons or households that have available other sources of income or resources with which to support themselves. The amendments are intended to accomplish this by a number of means: limits on the amount of a potential recipient's earned income to be disregarded in determining eligibility and grant size, Pub.L. No. 97–35, § 2301; redefinition of a potential recipient's income and resources, § 2302; lower income limits on eligibility, § 2303; new treatment of lump-sum payments and earned income advances, §§ 2304, 2305; and several other approaches §§ 2306–2320.

*Philadelphia Citizens in Action v. Schweiker*, 669 F.2d 877 at 879 (3d Cir. 1982).

**20.** In proposing a bill to restore to the AFDC program the work incentive eliminated by O. B. R. A., Senator Patrick Moynihan, in October, 1981, placed in the Congressional Record an editorial from the *Washington Post* describing the perceived work disincentive enacted by O. B. R. A. and the countervailing interests that the Reagan administration (and apparently Congress) viewed as more important than encouraging AFDC recipients to work:

KEEP WORKING MOTHERS WORKING

In case you missed the first, or second, or third time around, let us say it again: there is something fundamentally wrongheaded and outrageously unfair about the recent changes in welfare law that punish poor people for working. We are not talking about some abstruse concern of theoretical economics. We are talking about real people who now face the grotesque choice of either quitting their jobs or, by keeping them, losing both income and medical care.

opinion, it was clearly the intent of Congress to exclude all work expenses for purposes of calculating AFDC eligibility. Thus, the Colorado attempt to standardize work expenses was struck down by the Supreme Court in *Shea*. Under O. B. R. A., however, Congress has expressly mandated the application in all states of standard disregards of the type rejected in *Shea*.[21] Absent clear evidence of a contrary congressional intent, this court must conclude that the work-related expenses standardized in the $75 work-expense disregard represents the entire recognition Congress intended to permit the states to make for mandatory payroll withholdings.[22]

Although the court recognizes that its interpretation of O. B. R. A. may result in financial strain for some AFDC families, its attention has not been invited to any provision of federal law permitting the states to disregard mandatory payroll deductions in computing income, nor to any provision permitting the "work-incentive disregard" to be applied for four months from the date of the promulgation of the amendments to MPAPM. The policy arguments put forth by plaintiffs are more appropriately directed to a different forum.[23]

The application for preliminary injunctive relief must be, and it hereby is, DENIED.

---

Why would the administration propose, and Congress enact, a law with so perverse a result? OMB Director David Stockman defends the changes on two grounds: they are that (1) previous welfare law was so generous to the working poor that families with incomes of $20,000 or more could still receive aid, and (2) there is no way to provide work incentives for the poor by income "disregards and offsets" without "putting half the population" on welfare....
*See* Congressional Record S. 11991 (October 22, 1981).

**21.** The Colorado regulation struck down in *Shea* did not standardize payroll deductions. If it had chosen to do so, Congress could, of course, as did Colorado, mandate that such expenses be deducted in addition to the $75, the child-care expenses, and the work-incentive deduction. As noted above, however, there appears to be no present congressional intent to do so.

**22.** The defendant has filed an affidavit of the Commissioner of the Bureau of Income Maintenance of D.H.S. indicating that D.H.S. intends to treat tax refunds as *resources* if H.H.S. follows through with its preliminary indication that the states will be given the option of treating tax refunds as lump sum payments or as resources. Although neither the H.H.S. nor the D.H.S. position on the treatment of refunds has been established and clearly no issue in that regard is currently before the court, it would seem that if mandatory tax withholdings are not disregarded from income when earned, they may not *again* be considered as *income* when refunded, though their treatment as "resources" may be permissible. The numerous cases which have considered tax refunds as income or resources, *see* Annot., 3 A.L.R.4th 1074 (1981), were decided during the period when tax withholdings were considered "expenses reasonably attributable to the earning of such income," since repealed.

**23.** As the Supreme Court stated in *Dandridge v. Williams*, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970):
We do not decide today that the [state law] is wise, that it best fulfills the relevant social and economic objectives that [the State] might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court.... [T]he Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients.