JAMES, Constance, Individually and on behalf of all others similarly situated, and Philadelphia Welfare Rights Organization, by its Executive Director, Brookins, Louise on behalf of its members and all others similarly situated

v.

O'BANNON, Helen, Individually and as Secretary of DPW and Stovall, Don Jose, Individually and as Executive of the Philadelphia County Board of Assistance

and

Margaret M. Heckler, Individually and as Secretary of the United States Department of Health and Human Services, James, the Philadelphia Welfare Rights Organization and the class they represent, Appellants.

No. 82–1438.

United States Court of Appeals, Third Circuit.

Argued Jan. 24, 1983.

Decided Aug. 17, 1983.

Rehearing Denied Sept. 14, 1983.

Stephen F. Gold, Philadelphia, Pa., for appellant, Constance James.

Richard Weishaupt (argued), Community Legal Services, Philadelphia, Pa., for appellant, Philadelphia Welfare Rights Organization.

Peter F. Vaira, Jr., U.S. Atty., Walter S. Batty, Jr., Joan K. Garner, Asst. U.S. Attys., Philadelphia, Pa., Diane C. Moskal (argued), Regional Atty., Region III, U.S. Dept. of Health and Human Services, Philadelphia, Pa., for appellee, Margaret M. Heckler.

John O.J. Shellenberger (argued), Deputy Atty. Gen., Philadelphia, Pa., for appellees, Helen O'Bannon and Don Jose Stovall.

Before SEITZ, Chief Judge, and ADAMS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

### I.

At issue in this case is the proper treatment, under Sections 2301 and 2302 of the Omnibus Budget Reconciliation Act (OBRA), Pub.L. 97–35, 95 Stat. 843–45 (1981) (codified at 42 U.S.C. §§ 602(a)(7) and 602(a)(8)), to be accorded to amounts mandatorily withheld for taxes from earned income received by beneficiaries of Subchapter IV, Part A of the Social Security Act, Aid to Families of Dependent Children (AFDC). Plaintiffs Constance James and the Philadelphia Welfare Rights Organization (PWRO), on behalf of all Pennsylvania AFDC households receiving earned income, argue that, under 42 U.S.C. § 602(a)(7) (1981), any amounts which are to be attributed to AFDC beneficiaries as "income" are subject to the condition that they be "available." They therefore argue that amounts mandatorily withheld from wages for purposes of federal, state and local taxes and for old age, survivors and disability insurance (FICA) must accordingly be deducted or disregarded from "income" for purposes of determining eligibility and benefits under AFDC, since such amounts are not "available."

Defendant O'Bannon, the Secretary of the Pennsylvania Department of Public Welfare (PDPW), and Defendant Heckler, the Secretary of the United States Department of Health and Human Services (HHS), argue that such mandatorily withheld amounts are no more than additional "work expenses" included within the standardized $75 disregard[1] enacted by Con-

---

1. We understand the term "disregard" (or "disregards") to mean particular categories of monies which are excluded from consideration as income for purposes of AFDC in the determination of (1) eligibility for grants based on the amount of income attributable to an AFDC beneficiary; and (2) the amount of such grants which a beneficiary may receive. For example,

gress in Section 2302 of OBRA (codified at 42 U.S.C. § 602(a)(8)(A)(ii)), and are therefore not to be separately deducted from "earned income" as that term is used in 42 U.S.C. § 602(a)(8).

The district court, agreeing with the defendant Secretaries, granted summary judgment in their favor and against plaintiffs. *James v. O'Bannon,* 557 F.Supp. 631 (E.D.Pa.1982). We affirm.

## II.

Because of the statutory scheme under which AFDC grants are made and the changes that have ensued over the years due to Supreme Court interpretation[2] and legislative amendments, it will help in the understanding of the discussion to follow if we briefly review the AFDC program.

When the AFDC program was instituted, it was to be a program administered by the states but with federal funding participation. One feature of the program as it evolved directed the states to take into consideration those expenses which were reasonably attributable to the earning of income by the beneficiary. Those expenses, which were related to employment, were to be deducted from the income earned by the AFDC applicant, in order to determine whether, and in what amount, the applicant would receive AFDC assistance. Once the applicant was deemed eligible, the amount of the assistance which the state would afford under the program would be determined by comparing the applicant's earned income, less authorized deductions from that income, with the state's standard of need. If the state's standard of need ex-

ceeded the applicant's earned income less authorized deductions, the difference would be made up by the state in an AFDC grant.[3]

In 1969, the Secretary of HEW (now HHS), having the authority to promulgate regulations implementing the AFDC program, provided by regulation that, among the other expenses which were to be subtracted from the earned income of the AFDC applicant, were income tax withholdings, lunches, transportation to and from work, and the like. Since at least that date, therefore, withholdings for income taxes and taxes of similar character have been deducted from gross earnings as personal expenses.

In 1974, when the Supreme Court rendered its decision in *Shea v. Vialpando,* 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120, the issue was presented as to whether or not the *state* could establish a fixed amount or flat sum for all work expenses. Because the statute at that time required the state to "take into consideration ... any expenses reasonably attributable to the earnings of ... income," the Supreme Court held that no fixed amount, if it was not individualized so as to allow consideration of expenses in excess of the fixed amount, conformed to the statutory mandate. Thus, *Shea* taught that to the extent income tax withholdings were to be subtracted from earned income as other work expenses were, a flat sum amount established by the state, which did not allow for deduction of *all* expenses incurred by an applicant in excess of the fixed amount, could not stand. Significantly, *Shea* treated tax withhold-

---

as the discussion in text reveals, one such "disregard" is the part-time employee Standard Work Expense Disregard of $55. In the present case that $55 disregard was subtracted from Mrs. James' gross monthly income of $588.90. Other applicable disregards, which are also subtracted from gross monthly income, are referred to in text.

2. *Shea v. Vialpando,* 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974). An illuminating discussion describing the AFDC program may be found in *Shea, supra,* 416 U.S. at 253–54, 94 S.Ct. at 1750.

3. In *Shea* the Supreme Court characterized this aspect of the programs as follows:

If, ... the net amount of "earned income" is less than the predetermined statewide standard of need, the applicant is eligible for participation in the program and the amount of the assistance payments will be based upon that difference.

*Shea v. Vialpando,* 416 U.S. at 254, 94 S.Ct. at 1750.

ings no differently than other work related expenses.

During this period of time the AFDC statute also provided the following procedure for determining the amount of AFDC grants to which a beneficiary was entitled: the gross earned income was first subjected to a deduction of a work incentive "disregard". The amount of that deduction was calculated by taking one-third of the gross earned income and adding to it $30. Hypothetically, therefore,[4] if the applicant earned $900, the first calculation to be made would be to subtract from that amount $330 (one-third of $900 plus $30), leaving a balance for further calculation of $570. It should be remembered, however, that the $330 subtracted did not represent an expenditure made by the AFDC applicant to any third party. Rather, it represented a sum that was retained for normal family needs and uses. The deduction was for computational purposes only.

The next deduction to be made under the statute as it then appeared, and pursuant to the Secretary's regulation, was a work expense deduction or "disregard." That deduction (under *Shea*) would be a total of the personal expenditures incurred by the applicant for lunches, transportation, child care expenses, mandatory payroll deductions, and the like.[5] Income tax withholdings were included in that total, so that, if income tax withholdings amounted to $25 and the other personal expenses, including child care, amounted to $125, a further deduction of $150 ($25 for withheld taxes, plus $60 for child care, plus $65 for transportation, lunches, and so forth) would be subtracted from the $570 previously noted. At that point in the calculation, $420 would remain to be measured against the state's standard of need. Assuming hypothetically

that the state's standard of need was $500, the difference of $80 would be paid to the applicant as an AFDC grant.

Had there been no further revisions to the AFDC legislation, the hypothetical analysis which we have recited above would still be employed, and there would have been no occasion for the plaintiffs here, or the plaintiffs in *Turner v. Prod,* 707 F.2d 1109 (9th Cir.1983), the Ninth Circuit decision which we will discuss, *infra,* to contest the state's administration of AFDC. For even though income tax withholdings were regarded by the Secretary and by *Shea* as work expenses for purposes of deduction or "disregards", they had in fact been subtracted from gross earned income during the period prior to the OBRA amendments. In 1981, however, Congress enacted OBRA and changed the statutory scheme of AFDC.

One change made was to permit a standard or uniform deduction for all work-related expenses. Congress effected this change by eliminating from the statute the language upon which *Shea* relied. It eliminated the requirement that a state "take into consideration . . . any expenses reasonably attributable to the earning of . . . income." Thus *Shea* no longer stood in the way of a standard deduction which would embrace all work-related expenses, even if those expenses exceeded the fixed amount established. Moreover, the statute itself made provision for a $75 work-expense deduction or "disregard" against earned income or a lesser amount as the Secretary might prescribe, where the applicant was only a part-time employee.[6]

In addition, for the first time, the statute expressly allowed child care expenses and provided that those expenses—significantly

---

**4.** We recognize that these figures may bear little relation to the earnings, expenses, and tax withholdings of a typical AFDC recipient. They are used here purely for illustrative purposes.

**5.** The statute in effect at the time *Shea* was decided was interpreted by *Shea* to include child care expenses and mandatory payroll deductions as employment related expenses

which were to be computed on an individualized basis. *Shea v. Vialpando,* 416 U.S. at 254, 94 S.Ct. at 1750.

**6.** In this case Mrs. James was not engaged in full time employment and so the deduction afforded to her was a $55 rather than a $75 "disregard." No issue relating to this subject is involved on this appeal.

not included in work-related expenses—could be deducted as a separate "disregard" up to a limit of $160. Lastly for our purposes, OBRA provided that the work incentive "disregard" was to be applied, not as the first deduction from gross earned income, as it had previously been applied, but rather only after all of the other separate "disregards" had been given effect. This of course had the effect of reducing the ultimate AFDC grant to the beneficiary, because applying the one-third plus $30 work incentive "disregard" to a sum which had been reduced by amounts for work expense and child care obviously would result in a smaller work incentive disregard than would have resulted had the "work incentive disregard" been computed on the basis of gross earned income.

Indeed, in retracing the steps of the hypothetical which we earlier set out, if we were to use the same hypothetical figures as above, but were to apply the OBRA amendments, the work incentive "disregard" would not total $330, but would be only $280 ($900 gross earned income minus $150 work expenses = $750; one-third of $750 plus $30 = $280). However, under OBRA, the applicant would have had the benefit of a standard deduction for work-related expenses (which specifically excluded child care expenses) and would also have had a separate child care deduction or "disregard."

Thus, by these legislative choices reflected in OBRA, the issue before us has narrowed down: did Congress when it amended the AFDC program without changing the content of the work-related expense "disregard" (which at least since 1969 and up until the present has always included mandatory tax withholdings) intend to create a separate tax withholding "disregard"? The Ninth Circuit in *Turner v. Prod, supra,* has analyzed the relevant legislation and Congress's objectives and has concluded that such was the congressional intent. Our analysis, which follows, concludes otherwise.

### III.

#### A.

Plaintiff Mrs. Constance James and her three minor children reside in Philadelphia and have received assistance under the AFDC program.[7] Mrs. James, at the time of the district court's decision, was employed part time as a bus matron for handicapped children with the School District of Philadelphia. Mrs. James, who worked five hours per day, received a gross monthly income of $588.90. App. 11a (complaint, ¶ 32.).

The PDPW in February of 1982 claimed that, in light of the state standard of need, and of the disregards of "earned income" applicable to Mrs. James, she was entitled to an assistance grant of $45 per month. This amount was determined under regulations that were adopted by the PDPW effective November 7, 1981, and that are compiled in the PDPW's Public Assistance Eligibility Manual (PAEM), see App. 146a–47a (Section 183.44(d)). The following calculations were performed by PDPW in order to

7. The general structure and goals of the AFDC program were ably described by Judge Adams of this court in *Philadelphia Citizens in Action v. Schweiker,* 669 F.2d 877 (3d Cir.1982) (upholding HHS interim rules carrying out OBRA mandate):

Congress created the AFDC program in 1935, and established it in Title IV, Part A of the Social Security Act, 49 Stat. 627, codified at 42 U.S.C. §§ 601–676. The program is intended to promote the care of needy dependent children in their own homes or in those of relatives and to assist the parents or relatives with whom they live to attain self-sufficiency. *See* 42 U.S.C. § 601. Under the statutory program, benefits are paid and administered by those states that wish to participate in the program. A state that desires to participate must first obtain from HHS approval for its state plan, which must conform with the statutory requirements of Title IV and the HHS implementing rules. States that receive approval can obtain reimbursement from the federal government for more than half of the benefits paid and administrative expenses incurred under their plan. *See* 42 U.S.C. § 603.

*Philadelphia Citizens in Action,* 669 F.2d at 879.

determine the amount of Mrs. James' AFDC grant: [8]

| Gross Monthly Income | | $588.90 |
| Standard Work Expense Disregard [9] | | |
| (for part time employee) | − 55.00 | |
| Work Incentive Disregard [10] | | |
| ($30 plus one-third) | −197.90 | |
| Total Disregards | −255.90 | |
| Net Income Available for | | |
| Current Use | | $336.00 |
| Monthly Grant [11] | | $ 45.00 |
| Standard of Need for Family of Four | | $381.00 |

Mrs. James contends that she and her three minor children were entitled to a monthly assistance grant of $112, rather than $45. Her figure is based upon the following calculation: [12]

| Gross Monthly Income | | $588.90 |
| Amounts Withheld for federal state, | | |
| and local taxes, and FICA [13] | −100.53 | |
| Standard Work Expense Disregard | − 55.00 | |
| Sub-total of Disregards | −155.53 | |
| Remainder | | $433.37 |
| Work Incentive Disregard | | |
| ($30 plus ⅓ of remainder) [14] | −174.46 | |
| Net Income Available for | | |
| Current Use | | $258.91 |
| Monthly Grant | | $122.09 [15] |
| Standard of Need for Family of Four | | $381.00 |

**8.** See App. 11a (complaint, ¶ 33.), 17a (answer, admitting ¶ 33.).

**9.** Section 183.44(d)(1)(i)(B) of the PAEM provides:

(1) Work Expense Deductions from Earned Income . . .

(i) *Wage Allowance.* From gross wages, commissions, bonuses, the following will be deducted:

\* \* \* \* \* \*

(B) $55 per month of earned income of each client who is employed less than 30 hours per week or not employed throughout the month.
App. 146a.

**10.** Section 183.44(d)(3)(i) of the PAEM provides:

(i) As an incentive to eligible AFDC or CU clients to obtain employment, the first $30 of the net earned income after deductions allowed in paragraphs (1) and (2) of this section plus ⅓ of the remainder for *each* employed client will be deducted for the first four consecutive months (or eight semi-monthly assistance checks), in which that applicant or recipient has earnings.
App. 147a (emphasis in original).

**11.** Evidently Mrs. James claimed no deduction for child care expenses. Pursuant to Section 183.44(d)(2)(i)(B) ("Personal Expense Deduc-

It is undisputed that additional amounts are withheld from Mrs. James' gross earnings, for union dues and for health insurance benefits. App. 12a, 17a. Mrs. James alleged, in addition, that she had other work-related expenses, "including SEPTA fares, lunches and job-related clothing expenses," and that the combination of these expenses and of the amounts mandatorily withheld "far exceed the 'Standard Work Disregard' of $55 per month." App. 12a (complaint, ¶ 36.). The existence and the amount of these additional work-related expenses are not disclosed by the record and neither is the amount of the additional "mandatory" withholdings. The defendant Secretaries did not, however, dispute Mrs. James' allegations in their motions for judgment on the pleadings. Neither have the Secretaries questioned the finding of the district court that Mrs. James' claim is "typical of the claims" of the class.

**B.**

The complaint, naming as defendants only the state defendants, was filed on

tions from Earned Income"), Mrs. James could claim as much as $120 per month per child for "the actual cost of care of dependent children or incapacitated individuals living in the same home and receiving AFDC."

**12.** See Appendix 11a (complaint, ¶ 34.), 17a (admitting that this is basis for claim).

**13.** Pursuant to 26 U.S.C. § 3402 (1982) (federal income taxes), 72 P.S. § 7316 (1971) (state taxes), 53 P.S. § 6913 (IV.)(b) (municipal taxes), and 26 U.S.C. § 3102 (1977) (old age, survivors, and disability insurance) respectively.

**14.** Plaintiffs evidently miscalculated in arriving at the amount, $164.44, presented by their second amended complaint. The correct figure is $174.46 shown in text. Deducting the $174.46 from $433.37 (the amount remaining after deducting from gross monthly income the amount of taxes withheld and of work expenses) leaves $258.91. Deducting $258.91 from $381, would result in a monthly AFDC grant of $122.09, rather than the $112, claimed in Mrs. James' complaint. This discrepancy, however, is not material to the present appeal.

**15.** See note 14, *supra.*

April 9, 1982, after the district court granted Mrs. James' motion to proceed *in forma pauperis.* App. 2a. On April 14, 1982, the state defendants moved to bring in the Secretary of HHS as an additional defendant, in order to ensure that, in the event the state regulations were invalidated, PDPW would not be denied federal financial participation for failure to conform to federal regulations. This motion was granted on April 19, 1982. Also on April 14, 1982, plaintiffs filed an amended complaint and moved for a temporary restraining order or preliminary injunction. The court at that time also had before it the motion of state defendants for judgment on the pleadings.

On June 21, 1982, the court delivered its findings of fact and conclusions of law from the bench. The court denied plaintiffs' motion for preliminary injunction. Deeming defendants' motion for judgment on the pleadings to be, in light of the expanded state of the record, a motion for summary judgment, the court granted summary judgment for defendants. An order so providing was entered on June 22, 1982, and plaintiffs filed a notice of appeal from that order.

### IV.

█ It is indeed "axiomatic," as the Ninth Circuit observed in *Turner v. Prod,* 707 F.2d 1109, 1114 (9th Cir.1983) (hereinafter *Turner*), "that the starting point for interpreting a statute is the language of the statute itself." *Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (Rehnquist, J. for a unanimous Court). Yet, as the differing results reached by the courts which have considered the present issue show, the language of sections 602(a)(7) & (a)(8) has been subject to differing interpretations. *See, e.g., Dickenson v. Petit,* 536 F.Supp. 1100, 1111 (D.Me.1982) (in holding that tax withholdings are encompassed in work expense disregard and not to be deducted separately, the court also stated that "earned income" . . . is thus a subset of the more general category of "income."); *Turner v. Woods,* 559 F.Supp.

at 613 (in holding that tax withholdings are to be separately and additionally deducted from "earned income," stated that regulatory definition of "earned income" is flatly inconsistent with regulatory definition of "income"); *aff'd. Turner v. Prod, supra.*

In 1981 Congress, as part of the many budgetary limitations enacted in the Omnibus Budget Reconciliation Act, Pub.L. 97–35, 95 Stat. 357–933 (1981), legislated significant changes in the method by which various amounts were to be disregarded from the earned income of AFDC beneficiaries for purposes of determining their eligibility and benefits. These changes were set out in detail in Section 2301 of OBRA, which provides, in relevant part, as follows (underlining added):

> Sec. 2301. Section 402(a)(8) [42 U.S.C. § 602(a)(8) ] of the Social Security act is amended to read as follows:
>
> [A State plan for aid and services to needy families with children must . . .]
> "(8)(A) provide that, with respect to any month, in making the determination under paragraph (7), the State agency—
>
> \*     \*     \*     \*     \*     \*
>
> (ii) shall *disregard from the earned income* of any child or relative applying for or receiving aid to families with dependent children . . . *the first $75 of the total of such earned income* for such month (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-time employment or not employed throughout the month);
>
> (iii) shall *disregard from the earned income* of any child, relative, or other individual specified in clause (ii), *an amount equal to expenditures for care* in such month for a dependent child, or an incapacitated individual living in the same home . . . to the extent that such amount (for each such dependent child or incapacitated individual) does not exceed $160 (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-

time employment or not employed throughout the month); and

(iv) shall *disregard from the earned income* of any child or relative receiving aid to families with dependent children, or of any other individual . . . *an amount equal to the first $30 of the total of such earned income not already disregarded* under the preceding provisions of this paragraph *plus one third of the remainder thereof* . . . .

"[(8)](B) provide that (with respect to any month) the State agency—

\* \* \* \* \* \*

"[(ii)](II) in the case of the earned income of a person with respect to whom subparagraph

(A)(iv) has been applied for four consecutive months, shall not apply the provisions of subparagraph (A)(iv) for so long as he continues to receive aid under the plan and shall not apply such provisions to any month thereafter until the expiration of an additional period of twelve consecutive months during which he is not a recipient of such aid;"

It is the language of this section, and particularly the term and concept of "disregards from 'earned income,'" upon which the defendant Secretaries primarily rely. It is also this language which the district court in this case, and other courts that have accepted the Secretaries' position, have emphasized. *See James v. O'Bannon,* 557 F.Supp. 631, 635–36, 639–40 (E.D.Pa. 1982); *Bell v. Hettleman,* 558 F.Supp. 386, 392–93 (D.Md.1983); *Dickenson v. Petit,* 536 F.Supp. 1100, 1111 (D.Me.1982).

Implicit in this newly enacted system of disregards, is perhaps the most significant change made by the OBRA Congress. That change, to which we have previously adverted, eliminated the previous instruction to the states to "take into consideration . . . any expenses reasonably attributable to the earning of any such income." 42 U.S.C.A. § 602(a)(7) (West 1974). The Supreme Court in *Shea v. Vialpando,* 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974), had inter-

preted that provision to proscribe "a standardized work expense allowance . . . [which did not] provide [ ] for individualized consideration of expenses in excess of the standard amount." 416 U.S. at 265, 94 S.Ct. at 1756. Having enacted in Section 2301 of OBRA a "maximum or absolute limitation [of $75] upon the recognition of expenses," 416 U.S. at 265, 94 S.Ct. at 1756, Congress proceeded in Section 2302, to delete the provision upon which the *Shea* Court relied.

An examination of Section 2302 reveals that, while Congress still required the states to consider "any other income and resources," it at the same time removed all references to considering expenses related to the earning of income (a feature of the earlier statute). Section 2302 provides, in relevant part, as follows:

Sec. 2302. Section 402(a)(7) [42 U.S.C. § 602(a)(7)] is amended to read as follows:

[A State plan for aid and services to needy families with children must . . .]

"(7) except as may be otherwise provided in paragraph (8) or (31), provide that the State agency—

"(A) shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid;

The language which Section 2302 retains was originally enacted by the Social Security Amendments Act of 1939, Pub.L. No. 76–379, § 401(b), 53 Stat. 1360, 1379–80 (1939), and has remained unchanged ever since. *See Turner,* 707 F.2d at 1114–15. It is this language, and the history of its administrative and judicial interpretation, upon which Mrs. James ultimately relies, in arguing that "income" for purposes of AFDC eligibility and benefits, must be sub-

ject to a condition of "availability." [16] It is this language upon which the courts that have accepted this argument have also relied. *See Turner,* 707 F.2d at 1116, 1121; *Turner v. Woods,* 559 F.Supp. 603, 610–11 (N.D.Cal.1982) (district court opinion in *Turner* ); *Williamson v. Gibbs,* 562 F.Supp. 687, 688–89 (W.D.Wash.1983); *Nishimoto v. Sunn,* 561 F.Supp. 692, 693 (D.Hawaii 1983); *RAM v. Blum,* 564 F.Supp. 634, 638–640 (S.D.N.Y.1983) (granting permanent injunction in favor of plaintiff AFDC recipients); *RAM v. Blum,* 533 F.Supp. 933, 942, 945 (S.D.N.Y.1982) (preliminary injunction in No. 82 Civ. 372).

Unfortunately, as we have earlier indicated, "the language [of the statute] is not helpful here." *Turner,* 707 F.2d at 1114. 42 U.S.C. § 602(a)(7) (1981) speaks throughout of "income" and requires the states to "take into consideration . . . any other income" [17] of beneficiary households. On the other hand, 42 U.S.C. § 602(a)(8) (1981) speaks throughout of "earned income" and establishes a system of disregards to be subtracted from "earned income." We believe that the most natural reading of these provisions is that "earned income," within the meaning of § 602(a)(8), is merely one kind of "income," within the meaning of § 602(a)(7). *See Bell v. Hettleman,* 558 F.Supp. at 393 (" '[i]ncome' includes unearned as well as earned income."); *Dickenson v. Petit,* 536 F.Supp. at 1111 (same). Yet the most striking feature evident on the face of 42 U.S.C. §§ 602(a)(7) and (8) is that "earned income," pursuant to Section 602(a)(8), is subject to carefully detailed treatment that is very different from that accorded to other kinds of "income." In order to determine whether the principles of "availability," applicable to the "any other income" provisions of Section 602(a)(7) must extend to the "earned income" provisions of Section 602(a)(8), it is necessary to examine the legislative history and administrative interpretations of the two sections.

## V.

### A. 42 U.S.C. § 602(a)(7)

We recognize that the answer to the question whether mandatory withholdings of taxes should be treated as an additional disregard, for purposes of determining AFDC eligibility and grants, is not obvious. The plaintiffs have urged that taxes should be so treated and they have called our attention to cases which, if followed, would lead us to conclude that, under their interpretation of section 602(a)(7), taxes should be separately deducted from gross earnings and therefore be independently disregarded.

We agree with Mrs. James, and with the Ninth Circuit, that there has been "an uninterrupted, consistent interpretation stretching over forty years" of the terms "any other income" and "resources" as they appear in section 602(a)(7). *Turner,* 707 F.2d at 1116. This interpretation is expressed most clearly in administrative regulations that were enacted originally in 1969 and reenacted virtually unchanged after the passage of OBRA.

45 C.F.R. § 233.20(a)(3)(ii)(D), *as amended by* 47 Fed.Reg. 5648, 5675 (Feb. 5, 1982) (underlining added) provides:

A State Plan for . . . AFDC . . . must . . . (3)(ii) Provide that, in determining need and the amount of the assistance payment, after all policies governing the reserves and allowances and disregard or setting aside of income and resources referred to in this section have been uniformly applied:

\* \* \* \* \* \*

(D) Net income . . . and resources available for current use shall be considered; *income and resources are considered available both when actually available*

---

**16.** By "availability," plaintiffs refer to the requirement that monies be available to them for meeting current needs and expenses. See 45 C.F.R. § 233.20(a)(3)(ii)(D) (1982).

**17.** We note that "[t]he phrase 'any other income' refers to any income *other* than *AFDC* income. It does not mean merely income other than earned income." *Dickenson v. Petit,* 536 F.Supp. 1100, 1112 (D.Me.1982) (citing *Shea v. Vialpando,* 416 U.S. 251, 261, 94 S.Ct. 1746, 1754, 40 L.Ed.2d 120 (1974)).

*and when the applicant has the legal ability to make such sum available* for support and maintenance.

As early as 1967 the Supreme Court noted that the predecessor of this regulation (which was virtually identical to the present version) "clearly comport[s] with the statute." *King v. Smith,* 392 U.S. 309, 319 n. 16, 88 S.Ct. 2128, 2134 n. 16, 20 L.Ed.2d 1118 (1968). *See also Lewis v. Martin,* 397 U.S. 552, 555, 90 S.Ct. 1282, 1283, 25 L.Ed.2d 561 (1970). Thus, it is plain that the principle of "availability" is well rooted in section 602(a)(7). *See Turner,* 707 F.2d at 1114–16.

Viewed from the perspective of the "availability" principle, it would appear that section 602(a)(7) requires that taxes be treated as an additional disregard, since arguably monies withheld for taxes are not available to meet the beneficiaries' current needs. Indeed, courts in numerous cases have held regulations invalid where the regulations included as resources or income, monies not actually available. *See, e.g., National Welfare Rights Organization v. Mathews,* 533 F.2d 637, 647 (D.C.Cir.1976) (collecting cases). In the *Mathews* case, the District of Columbia Circuit invalidated a regulation that provided for valuation of real and personal property "at their gross market value including encumbrances" because

> valuing resources without regard to encumbrances violates the cardinal principle of AFDC that only resources actually available may be counted in determining whether the recipient is within the state's definition of a standard of need.

*Mathews,* 533 F.2d at 649.

The district court in the instant case concluded that those cases, all decided prior to the OBRA amendments, and all relying upon the "availability" theory, were not dispositive of the present issue, since those cases did not concern the treatment of tax withholdings. *James v. O'Bannon,* 557 F.Supp. at 640. *See Dickenson v. Petit,* 536 F.Supp. at 1115 n. 13 (none of cases cited by

plaintiffs involved tax withholdings). The district court then refused to extend the "availability" concept to tax withholdings and in rejecting that concept held that taxes were not to be separately disregarded in computing the amount of AFDC grants.[18]

Much has been said for giving controlling effect to the "availability" principle in deciding the issue before us, and indeed the decisions of the *Turner* and *RAM* courts demonstrate the persuasiveness of such arguments. It is evident to us, however, from the presence of section 602(a)(8) in the AFDC statutory scheme—a section which provides for detailed "disregards of 'earned income' "—that our inquiry cannot end without a careful consideration of that statute.

#### B. Section 602(a)(8)

It is as plain in the case of "disregards of 'earned income' " under section 602(a)(8), as it is in the case of "any other income" under section 602(a)(7), that there is, as the Secretaries contend, a long and consistent history of interpretation of that term. In 1968, the Secretary published proposed regulations for various programs under the Social Security Act, including AFDC. 33 Fed.Reg. 10230 (July 17, 1968). After receiving comments,

> "certain changes in the regulations were made. The following are the major changes:
>
> (1) The *method for disregard of earned income has been modified.* In arriving at the amount of earned income to be applied against the assistance budget *the amount to be disregarded is to be deducted from gross income rather than from net income. Next the amount allowed for work expense is to be deducted. The remaining amount is then applied against the assistance budget."*

34 Fed.Reg. 1394 (January 29, 1969) (underlining added).

Thus, the proposed regulations were drawn in terms of gross income, from which

---

18. The district court of course recognized that the full work expense disregard should be applied. To the extent that taxes are included within that standardized disregard, the district court obviously would give them recognition.

certain amounts in particular categories were to be deducted. The *Turner* court explained this regulation as a means of

> "maximiz[ing] the amount of earned income which AFDC recipients could keep, thereby making it as worthwhile as possible for them to obtain and keep employment."

*Turner*, 707 F.2d at 1116.

The regulation that was finally promulgated, incorporated the Secretary's proposals and provided:

> A State Plan for ... AFDC must ... (6) Provide that for purposes of disregarding earned income the agency policies will include: (i) a definition of "earned income" in accordance with the provisions of subdivisions (iii) through (viii) of this subparagraph:
>
> \*    \*    \*    \*    \*    \*
>
> (iv) With reference to commissions, wages, or salary, the term *"earned income" means the total amount, irrespective of personal expenses, such as income-tax deductions,* lunches, and transportation to and from work, and irrespective of expenses of employment which are not personal, such as the cost of tools, materials, special uniforms, or transportation to call on customers.

45 C.F.R. § 233.20(a)(6)(iv) (1969) (underlining added).

> A State Plan for ... AFDC must ... (7) *Disregard of earned income; method*
>
> (i) Provide that the following method will be used for disregarding earned income: The applicable amounts of earned income to be disregarded will be deducted from the gross amount of "earned income," and work expenses, personal and non-personal, will then be deducted. Only the net amount remaining will be applied in determining need and the amount of the assistance payment.

45 C.F.R. § 233.20(a)(7)(i) (1969).

Thus, the 1969 regulations permitted income tax withholdings to be deducted from gross income, but they did so by grouping that deduction together with deductions for all other work-related expenses, including lunches, transportation and the like. These regulations have remained unchanged, even after the amended regulations were published in February of 1982. *See* 45 C.F.R. §§ 233.20(a)(6)(iv) and (a)(7)(i) (1981); 47 Fed.Reg. 5676–77 (February 5, 1982).

If the regulations on their face were not sufficient to establish the proposition urged by the Secretaries, it is also plain from other authoritative contemporary materials that the practice of treating tax withholdings as work-related expenses was well established. *See Shea v. Vialpando,* 416 U.S. at 254, 94 S.Ct. at 1750 ("Child care expenses and mandatory payroll deductions were also treated [by Colorado] as employment-related expenses."); Social Security Administration, Summary of State Agency Policy on Expenses Reasonably Attributable to the Earning of Income, January 1972, Appendix 122a–35a (42 states recognize one or more of items at issue as expenses reasonably attributable to earning of income).

Thus, section 602(a)(8), which details the disregards to be subtracted from gross monthly earnings, must be construed and interpreted in the light of the regulations that preceded the OBRA amendments and that consistently, since at least 1969, to the present have treated income tax withholdings as a work-related expense.

### C.

We therefore face a situation in which two different regulations, one under 602(a)(7) leading to an "availability" argument, and the other under 602(a)(8) characterizing income tax withholdings as work-related expenses, arguably lead to two different treatments of the same item. In turn, each has been implicitly affirmed as a result of the OBRA legislation. For, as the Supreme Court has repeatedly stated:

> Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change, see *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414, n. 8 [95 S.Ct. 2362, 2370, n. 8, 45 L.Ed.2d 280] (1975); *NLRB v. Gullett Gin Co.,* 340 U.S. 361,

366 [71 S.Ct. 337, 340, 95 L.Ed. 337] (1951); *National Lead Co. v. United States,* 252 U.S. 140, 147 [40 S.Ct. 237, 239, 64 L.Ed. 496] (1920); 2A C. Sands, Sutherland on Statutory Construction § 49.09 and cases cited (4th ed. 1973). So too, where, as here, Congress adopts a new law incorporating sections of a prior law, Congress can normally be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute. *Lorillard v. Pons,* 434 U.S. 575, 580–581 [98 S.Ct. 866, 869–870, 55 L.Ed.2d 40] (1978).

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 382 n. 66, 102 S.Ct. 1825, 1841 n. 66, 72 L.Ed.2d 182 (1982). This presumption has particular force in the present case, for, as the Supreme Court has also said:

> [t]hat presumption is particularly appropriate [where] Congress exhibited both a detailed knowledge of the ... provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation.

*Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978).

With respect to the OBRA changes in AFDC, it should be noted, for example, that 42 U.S.C. § 602(a)(7)(B) (1981) expressly incorporates the principle of the *Mathews* case, namely, that the value of "resources" should be "reduced by any obligations or debts with respect to such resources." More significantly, by deleting from 42 U.S.C. § 602(a)(7)(A) (1981) the crucial language, interpreted in *Shea* as requiring individualized accounting of work expenses, Congress rejected the *Shea* ruling, in order to provide for a standardized work expense disregard. *See* 42 U.S.C. § 602(a)(8)(ii) (1981). Thus, it is apparent that the OBRA Congress was knowledgeable about the AFDC program as interpreted by the courts and the Secretary. It was also willing to depart from those features of the program that it regarded as undesirable.

There can, then, be no doubt that while Congress must be presumed to have adopted the generalized availability concept relied upon by the plaintiffs, it also adopted the detailed system of "disregards of 'earned income' " (45 C.F.R. § 233.20(a)(7)(i) (1982)) which included the work expense disregard incorporating mandatory tax withholdings. It is against this background, together with consideration of congressional objectives, that the arguments made by the plaintiffs and the Secretaries must be measured. See *Ginsberg & Sons v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704 (1932) (discussion of statutory construction).

## VI.

### A.

We observe first that tax withholdings prior to OBRA, while deducted from gross earnings, were only so deducted because they were deemed under the Secretary's regulation, 45 C.F.R. § 233.20(a)(6)(iv) (1969), to be a work-related expense. Second, no cases decided prior to OBRA have been called to our attention holding or even suggesting that tax withholdings were deducted from gross earnings in order to satisfy the "availability" theory upon which the plaintiffs rely.

Plaintiffs discount these observations, contending that, prior to OBRA, "it did not matter what such withholdings were labelled," Appt. brief at 25, since "[o]nce the Act was amended and the new regulations were in place, it was of no import to distinguish between taxes and work expenses." *Id.* Plaintiffs argue, further, that because taxes were in any event disregarded there was no need to litigate the issue. This argument was accepted by the Ninth Circuit in *Turner,* 707 F.2d at 1120–21.

We do not find this reasoning persuasive. It seems to us, that this reasoning overlooks the provision of 45 C.F.R. § 233.-20(a)(3)(ii)(D) (1969) to the effect that "net income ... available for current use" was to be determined "*after* all policies governing ... *disregards* ... *have been* uniformly

*applied.*" (emphasis added). *See Dickenson v. Petit,* 536 F.Supp. at 1111 n. 8. Assuming that "any expenses reasonably attributable to the earning of any such income" have been deducted and that the work incentive disregard ($30 plus one-third of the gross amount) has also been deducted, then the resulting figure is not only "available" for a beneficiary's needs, but that amount is enhanced, as a practical matter, by the amount of the work incentive disregard. That disregard, it should be remembered, had been subtracted from earned income, but for computation purposes only.

To illustrate this point, let us assume, as we did in section II, *supra,* that the beneficiary had gross earnings of $900. The work incentive disregard ($30 plus one-third of $900) or $330, would leave a balance of $570, against which work-related expenses would be applied. If we assume that work expenses, apart from tax withholdings, amounted to $125, and that tax withholdings were $25, then prior to OBRA an additional $150 would have been subtracted from the $570, leaving $420 as "available" to the beneficiary within the meaning of the regulation. What has been overlooked, however, is that the $330 representing the work incentive disregard is in truth also available, for those monies have never been expended or paid by the beneficiary to anyone. Thus, the total monies actually available are the $420 plus the $330, or $750. Accordingly, the amount of monies remaining available to a beneficiary would not have been affected by tax withholdings, as long as those withholdings had been less than the amount of the work incentive disregard. Indeed, it would follow from the availability theory that plaintiff argues, that tax withholdings, since plaintiffs would not regard them as work expenses, would not be disregarded at all. Yet plaintiffs admit that this was not the practice before OBRA.

Nor are we convinced that, merely because the legislative history of the 1962

amendments,[19] did not expressly refer "to mandatorily withheld taxes as work-related expenses," *Turner,* 707 F.2d at 1120, we should reject the Secretary's regulation and his own interpretation of it. As the Ninth Circuit has previously observed, the "broad rule-making powers," of the Secretary are "limited only by 42 U.S.C. § 1302 and the Constitution." *Arizona State Dept. of Public Welfare v. HEW,* 449 F.2d 456, 468 (9th Cir.1971) (quoting *Thorpe v. Housing Authority,* 393 U.S. 268, 277 n. 28, 89 S.Ct. 518, 523 n. 28, 21 L.Ed.2d 474 (1969)). 42 U.S.C. § 1302 vests the Secretary with extensive power to promulgate regulations in order to assure efficient administration of AFDC. As we have noted, there can be no doubt, in light of 45 C.F.R. § 233.20(a)(3)(iv), that the Secretary exercised this "broad rule-making power" to classify withheld taxes as work expenses. Further, we do not believe that it can be seriously contended that the Secretary's exercise of this power in his decision to classify withheld taxes as work expenses exceeded the parameters of the statutory authority granted by Congress. *See* 42 U.S.C. § 1302. *See also Shea v. Vialpando,* 416 U.S. at 254, 94 S.Ct. at 1750. Thus, we believe that it is a strained reading of the 1962 legislative history to argue that, because tax withholdings were not specifically mentioned, Congress intended that they not be included within the category of "any work expenses reasonably attributable to the earning of income."

We also reject the argument that, because certain states had apparently permitted individualized treatment of tax withholdings, while allowing only a flat sum for work expenses, we should construe section 602(a)(7) in similar fashion. *But see Turner,* 707 F.2d at 1120. Even assuming that some state agencies in the pre-OBRA period had so provided, and *Turner* refers only to the 1970 Colorado plan described in *Shea,* according to the Summary of State Agency Practice, in January of 1972 at least five states (Arizona, Florida, Arkansas, Colorado, and Vermont) either allowed a flat

---

**19.** The 1962 amendments, among other things added the work expense provision interpreted

in *Shea v. Vialpando, supra.*

amount to be disregarded for mandatory tax withholdings, or else included mandatory tax withholdings within an overall flat sum disregard. Thus, it is apparent that at least these five states did not regard themselves as bound to disregard all mandatory tax withholdings under the "availability" principle. Nor have any challenges to such state provisions, on the ground that they violated the requirement of "availability," been brought to our attention.

### B.

It seems plain to us that, at least since 1969, taxes withheld have *not* been "seen as conceptually distinct" from work expenses. *But see Turner,* 707 F.2d at 1120. It seems to us, further, that the actual classification of tax withholdings as work expenses has been entirely consistent with, and promotive of, the intent of Congress in enacting the AFDC program. Indeed, as we have previously indicated, the "availability" principle has not, as a matter of administrative practice or congressional legislation, been applied to the withholding of taxes, at least since 1969. This being so, it was not necessary for the OBRA Congress, in creating a standardized deduction (disregard) governing all work expenses (including tax withholdings) to "repeal *sub silentio* the 'income available' standard of the 76th Congress." *But see Turner,* 707 F.2d at 1121. As we construe the legislative history, there was quite simply no such standard, with respect to tax withholdings, to be overruled.

Further, examining the AFDC scheme as reenacted by the OBRA Congress, we believe that the "availability" principle ought

not now to be applied to tax withholdings, as to do so would be inconsistent with the intent of Congress in enacting those very amendments. In light of the clear and consistent agency practice prior to the OBRA amendments, we are satisfied that Congress intended to classify tax withholdings as "personal work expenses." 45 C.F.R. § 233.20(a)(6)(iv) (1969). This conclusion is reinforced by those portions of the legislative history of OBRA in which the system of earned income disregards has been described. See S.Rep. No. 97–139, 97th Cong. 1st Sess. 435, 501 (1981), *reprinted in* 1981 U.S.Code Cong. & Ad.News, 701, 767; House Conference Report No. 97–208, 97th Cong. 1st Sess. 978–79 (1981).[20] Nowhere in the reports is there any mention of a tax withholdings disregard under the "availability principle." There are, of course, abundant explicit references to the treatment to be given work expenses, and it is more than plain that the standard $75 disregard is "in lieu of itemized work expenses." House Conference Report No. 97–208 at 979, U.S.Code Cong. & Admin.News, p. 1341.

■ Thus on balance we are satisfied that, whatever the merits of the availability theory which plaintiffs have argued on the basis of section 602(a)(7), it does not control the explicit disregard provisions of section 602(a)(8) that Congress enacted in OBRA. *See Ginsberg & Sons v. Popkin, supra,* 285 U.S. at 208, 52 S.Ct. at 323 ("General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with

---

**20.** In S.Rep. No. 97–139, 97th Cong. 1st Sess. 501 (1981), U.S.Code Cong. & Admin.News, p. 768, the Senate Budget Committee described the AFDC system of disregards as follows:

*Present law.*—In determining AFDC benefits, States are required to disregard from the recipient's total income: (1) the first $30 earned monthly, plus one-third of additional earnings, and (2) any expenses (including child care) reasonably attributable to the earning of such income.... After these deductions, whatever income remains is used to reduce the amount of the AFDC grant.

In House Conference Report No. 97–208, 97th Cong. 1st Sess. 978–79 (1981), the Com-

mittee of Conference described the new provisions as follows:

States would be required to disregard the following amount of earnings, in the following order:

(a) *Eligibility Determination*—the first $75 of monthly earnings for full time employment (in lieu of itemized work expenses); and the cost of care for a child or incapacitated adult, up to $160 per child per month.

(b) *Benefit Calculation*—the first $75 of monthly earnings for full time employment; child care costs up to $160 per child per month; and $30 plus one-third of earnings not previously disregarded.

in another part of the same enactment.") Because the arguments made by the Secretaries, that tax withholdings are no more than another kind of work expense, find compelling support in the legislative and administrative history, we agree that the district court properly entered judgment for the Secretaries.

## VII.

### Congressional Purpose

We regard the above discussion, focussing upon the history of the administrative interpretation of 42 U.S.C. § 602(a)(8) and the legislative history of Sections 2301 and 2302 of OBRA, as sufficient to resolve the issue presented by this case. Nevertheless, we recognize that this court's holding that no separate deduction may be made for tax withholdings is in conflict with that of the Ninth Circuit in *Turner*. Because the *Turner* decision was based in part upon Congress's purpose in amending the AFDC program, we think it is appropriate briefly to discuss that subject.

### A.

There is no question about the basic purposes served by the AFDC program. "The AFDC program is designed to provide financial assistance to needy dependent children and the parents or relatives who live with and care for them." *Shea v. Vialpando,* 416 U.S. at 253, 94 S.Ct. at 1750. A second closely related purpose is "to help such parents and relatives 'to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection.'" *Shea v. Vialpando,* 416 U.S. at 253, 94 S.Ct. at 1750 (quoting 42 U.S.C. § 601).

The goal of helping parents or relatives to attain maximum self-sufficiency had been served since 1962 or earlier by structuring eligibility and benefits so as to create financial incentives for AFDC recipients to seek, accept and continue employment. Indeed, the congressional purpose behind the open-ended work expense disregard en-

acted in 1962 (discussed in *Shea*) was to avoid the disincentive to working which might be created if such work expenses were not considered. The 87th Congress stated this purpose as follows:

> Under existing law if these work expenses are not considered in determining need, they have the effect of providing a disincentive to working since that portion of the family budget spent for work expenses has the effect of reducing the amount available for food, clothing, and shelter. The bill has, therefore, added a provision in all assistance titles requiring the States to give consideration to any expenses reasonably attributable to the earning of income.

S.Rep. No. 1589, 87th Cong., 2d Sess., 17–18 (1962), U.S.Code Cong. & Admin.News, pp. 1943, 1960 (quoted in *Shea v. Vialpando,* 416 U.S. at 263, 94 S.Ct. at 1755).

Plaintiffs argue vigorously that the Secretaries' interpretation of the OBRA amendments will have such significant disincentive effect on the employment efforts of AFDC recipients that it must be regarded as inconsistent with the underlying congressional purpose of the AFDC program. The *Turner* court agreed that allowing separate disregards of mandatory tax withholdings "provides *less* of a disincentive to work than does [the system of disregards] advanced by the government," and concluded that

> If the court is to give any meaning at all to the purposive language which remains within the AFDC Act, it would seem that adoption of [plaintiff's] method of calculation is required.

*Turner,* 707 F.2d at 1123. As we have stated, we cannot agree.

### B.

Despite the fundamental objectives of the AFDC program, which we have just recited, it must be acknowledged that the primary congressional purpose of the OBRA amendments

> is to reduce or eliminate welfare benefits for those considered by Congress to be less needy than those completely without

resources—persons or households that have available other sources of income or resources with which to support themselves.

*Philadelphia Citizens in Action,* 669 F.2d at 879. As we construe the legislative history of these amendments, it reflects Congress's determination to effect a substantial departure from Congress's original policy of avoiding financial disincentives to employment. Noting that "statistics also show that under current law AFDC mothers are not achieving the goal of self-sufficiency," the Senate Budget Committee apparently determined to abandon the policy of attempting to encourage such self-sufficiency by creation of financial incentives. S.Rep. No. 97–139, 97th Cong. 1st Sess. 502 (1981). The Committee stated:

> Applied in this way, the committee believes that the provision [limiting the $30 plus one-third financial incentive disregard to four months] would provide a useful buffer to those trying to readjust to employment, but *without resulting in keeping families on welfare for an unlimited period.* Combined with other provisions the committee has approved which are aimed at providing employment for AFDC recipients, *these changes are expected to decrease welfare dependency, and emphasize the principle that AFDC should not be regarded as a permanent income guarantee.*

S.Rep. No. 97–139, 97th Cong. 1st Sess. 502–03, U.S.Code Cong. & Admin.News, p. 769 (1981) (underlining added). The term "other provisions" in the committee report has reference to the authorization given to the states to establish various work programs. These programs are designed "to improve the employability of participants through actual work experience," 42 U.S.C. § 609

(1981); to make jobs available "as an alternative to aid otherwise provided under the State plan," 42 U.S.C. § 614 (1981); and to establish "work incentive demonstration program[s]," 42 U.S.C. § 645 (1981). Although these various new provisions provide for approaches that differ in detail, it seems clear to us, in light of the legislative history, that they are expressions of a significant shift in the underlying policies of the AFDC program. These provisions, and the OBRA amendments to AFDC generally, indicate that although Congress continues to embrace the fundamental goal of encouraging self-sufficiency of AFDC recipients, it has largely abandoned the financial incentives approach which the 87th Congress had embraced.[21] Having determined that providing financial incentives for work was not achieving the goal of self-sufficiency and that such incentives were leading to ever-increasing public expenditures, Congress embarked on a new course. It is evident that by the OBRA amendments Congress has relied upon more direct incentives to employment, namely, encouragement to the states to provide such employment and to require that AFDC recipients accept it.

It is this new approach to achieving self-sufficiency for AFDC recipients that now "give[s] ... meaning ... to the purposive language which remains within the AFDC Act." *Turner,* 707 F.2d at 1123. The basic goal of "attain[ing] ... capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection," has indeed not been abandoned by Congress in the OBRA amendments. 42 U.S.C. § 601 (1981) (unchanged by OBRA amendments). However, Congress has adopted new means by which to achieve this basic goal. Thus, it is no longer possible to argue that inter-

---

21. The legislative history demonstrates that Congress was aware of the financial disincentives to employment that would be created by the OBRA changes instituted. *See, e.g.,* S.Rep. No. 97–139, 97th Cong. 1st Sess. 552 (1981), U.S.Code Cong. & Admin.News, p. 819 (IV. Budgetary Impact of the Finance Committee Amendments):

> These proposals [standardized work expense disregard, 4 month limit to $30 plus one-

third, and others] would, however, increase the work disincentives found in the current AFDC program. Currently AFDC families, on the average, are able to retain about 50 percent of their earned income. Under the proposed changes, AFDC families would be able to retain only about 20 percent of their earned income.

pretations of AFDC that create disincentives to employment must, because they have such an effect, be regarded as inconsistent with the purposes of the program.

It seems to us that the argument accepted by the *Turner* court, concerning congressional purpose, fails to recognize Congress's altered course. *See Turner*, 707 F.2d at 1122–23. Because, in light of the legislative history of the OBRA amendments to AFDC, we are not persuaded by the *Turner* reasoning, we cannot accept the conclusion of that court that the Secretaries' interpretation of sections 602(a)(7) & (8) is inconsistent with congressional purpose. It appears to us more in keeping with the congressional purpose to subsume tax withholdings under the standardized work expense disregard of 42 U.S.C. § 602(a)(8)(ii) (1981). Doing so must necessarily result in "reduc[ing] or eliminat[ing] welfare benefits for those considered by Congress to be less needy than those completely without . . . income." *Philadelphia Citizens in Action,* 669 F.2d at 879. Thus, although we rest our decision upon the history of administrative interpretations of 42 U.S.C. §§ 602(a)(7) & (8), and upon the legislative history of the OBRA amendments, we are satisfied that the congressional purposes underlying the AFDC program, as amended by OBRA, are served by and are consistent with our conclusion.

### VIII.

The June 22, 1982 order of the district court granting summary judgment for the Secretaries will be affirmed.